JOHN TYLER, as Assignee, etc., Respondent, *v.* LOUIS M. BROCK et al., Appellants.

Under the provisions of the bankrupt act of 1867 (§§ 35, 39), avoiding certain payments made by an insolvent within four months of the filing of the petition in bankruptcy, it is indispensable that the payment be made by the debtor, with intent to give a preference to his creditor, and that the creditor have reason to believe at the time that the debtor is insolvent.

E. and G., by false pretences, obtained goods from defendants upon credit; upon discovery of the fraud, defendants caused them to be arrested; they thereupon agreed to return the goods remaining, to pay for those sold, and to pay defendants' expenses. Defendants refused to accept the agreement of the debtors; whereupon F. agreed verbally to be security for the payment, and was accepted; the deficiency and expenses were subsequently agreed upon at $600. The goods were accordingly returned. F., at the time of such settlement, was indorser for E. and G. for $1,200, being secured by a mortgage on real estate and a chattel mortgage on their stock of goods; this defendants knew at the time of such settlement. Immediately thereafter E. and G. executed to F. a bill of sale of all their stock of goods. F. took possession and sold the goods for $1,860; out of this he paid the $1,200, the expenses of sale, and paid defendants $400, giving his note for the remaining $200, which he subsequently paid; defendants did not know, when they received payment, of the bill of sale to F. or of the sale of the

goods by him.  In an action by the assignee in bankruptcy of E. and G., under said provision of the bankrupt act, *held,* that plaintiff was not entitled to recover the $600 so paid; that the payment was made, not by the bankrupts, but by F., out of his own money; that it was immaterial that the agreement of F. was void, not having been reduced to writing; if he chose to pay, defendants could receive, and were not concerned with the question as to how he obtained the money so long as it was his.

Where a portion of a charge, which is excepted to, is erroneous, the failure to except to other portions presenting similar erroneous propositions, which were not conceded, but disputed on the trial, does not cure the error in the part which is excepted to.

It *seems* that the schedules of their indebtedness, made by bankrupts, are not evidence to show their insolvency in an action by the assignee in bankruptcy under said provisions.

(Submitted January 24, 1877; decided February 13, 1877.)

APPEAL from a judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment of the Superior Court of Buffalo in favor of plaintiff, entered upon a verdict.  The case was removed to the Supreme Court, under and by virtue of chapter 239, Laws of 1873, section 7.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Jno. B. Greene* for the appellants.  To vitiate a payment made by an insolvent within four months of his filing his petition in bankruptcy, a guilty collusion between the debtor and creditor to give a preference must be shown.  ( *Wilson* v. *City Bk.*, 17 Wal., 473, 484 ; *Cook* v. *Tullis*, 18 id., 332 ; *Clark* v. *Iselin*, 21 id., 360 ; *Hinkleman* v. *Smith*, 12 N. Bk. R., 12 ; *Kummerer* v. *Foote*, id., 334 ; *Castle* v. *Perrin*, 11 id., 80 ; *Mays* v. *Fritter*, id., 229 ; *In re King*, 10 id., 103 ; *Sleek* v. *Werner*, id., 574.)

*Lewis & Gurney* for the respondent.  The money paid to defendants having been paid within four months before the bankrupt filed his petition, may be recovered back.  (*In re Drummond*, 1 B. R., 10 ; *In re Sutherland*, id., 140 ; *In re*

*Dible*, 2 id., 185; *Curran* v. *Munger*, 6 id., 33; *In re Silverman*, 4 id., 173; *In re Smith*, 3 id., 98, 99; *In re White*, Lowell, 407; *Hardy* v. *Bininger*, 4 B. R., 77; Bump's Bkcy. Pr., 595, 615.) The bankrupt law only requires that the payee in such a case shall have reasonable cause to believe that the payment is made with a fraudulent intent. (*Foster* v. *Hockley*, 2 B. R., 131; 2 L. T. B., 8; 16 L. N., 137; *Graham* v. *Stark*, 3 B. R., 92; 2 C. L., 73; *In re Wright*, 2 B. R., 155; *In re Arnold*, id., 61; *White* v. *Raftery*, 3 id., 53; *Mer. Nat. Bk.* v. *Troua*, 1 id., 146; *Toof* v. *Martin*, 6 id., 49; 13 Wal., 40; *Buchanan* v. *Smith*, 5 C. L. N., 277; *Scanmon* v. *Cole*, 5 B. R., 257; *In re Forsyth*, 7 id., 174; *Port* v. *Corbin*, 5 id., 11; *Golson* v. *Nickoff*, id., 56; *Linkman* v. *Wilcox*, 1 Dil., 161; *Gidding* v. *Dodd*, 4 B. R., 657; *Boltie* v. *Gardner*, id., 323; *In re Kingsbury*, 3 id., 84–318; *Smith* v. *McLean*, 10 id., 260.)

Rapallo, J. The plaintiff, as assignee in bankruptcy of Edmund S. and George D. King, sought by this action to recover of the defendants the value of certain goods alleged to have been transferred by the bankrupts to the defendants on or about the 10th of May, 1870, and a sum of $600 alleged to have been paid by the bankrupts to the defendants, on or about the 14th of May, 1870. The Kings were afterwards adjudged bankrupts, in pursuance of a petition filed May 28, 1870. The facts established at the trial material to the present question, were, that on the 18th of April, 1870, at Buffalo, New York, the Kings by false pretenses obtained from the defendants goods to the amount of $1,636, which were by direction of the Kings shipped by the defendants to Ellicotville, and thence reshipped by the Kings to Meadville, Pennsylvania. Soon afterwards the defendants, having discovered the fraud, procured a criminal warrant against the Kings and caused them to be arrested at Buffalo, on the 5th of May, 1870. The Kings thereupon offered to settle the matter by returning the goods to the defendants. The defendants objected, alleging that some of the goods had been sold and

there would be a deficiency, and also that expenses had been incurred. The Kings then offered to pay the deficiency and expenses as soon as ascertained, but the defendants refused to accept the agreement of the Kings, whereupon one Foote, who was present, agreed verbally to be security for the payment, and was accepted by the defendants as such, and the Kings gave to defendants an order for the goods, and the matter was thus settled and the criminal proceedings abandoned.

On the 19th of May, 1870, the goods having been returned to the defendants from Meadville, and the deficiency and expenses having been liquidated at the sum of $600, Foote delivered to Wm. Addington $400 in money, and his (Foote's) note for $200, to pay to the defendants on the account of the Kings. Addington made this payment as directed, and Foote paid his note of $200.

It was proved that Foote was, before and at the time of the settlement of May fifth, indorser for the Kings to the amount of $1,200, and as security for such indorsement held a mortgage on a farm of one of the Kings, and a chattel mortgage on their stock of goods, all of which was known to the defendants at the time of making the settlement with the Kings on the fifth of May. And it further appeard, that immediately after such settlement the Kings executed a bill of sale to Foote, of their entire stock of goods. That he took possession thereof on the sixth of May, and from the twelfth to the fifteenth of May, sold it out by auction, said Addington being the auctioneer. That the proceeds amounted to $1,860, out of which Foote paid the note of $1,200, on which he was indorser for the Kings, and the expenses of the sale, and paid this $600 to the defendants. But the defendants had no knowledge of the bill of sale from the Kings to Foote, nor of the sale by Foote of the stock of the Kings, till long after the payment to them by Foote of the $600, nor did they know of any indebtedness of the Kings other than the $1,200, for which Foote was indorser. They made no inquiry in reference to the solvency of the Kings after the sale of the goods to them.

The judge charged the jury that the plaintiff could not recover for the goods retaken by the defendants, but that he could recover for the $600 paid them, provided they had knowledge of the fact that the Kings were insolvent at the time of such payment, or knowledge of facts sufficient to put them, as careful business men, upon inquiry touching the solvency of the Kings. The defendant's counsel excepted to the decision that the plaintiffs could recover the $600, provided the defendants had knowledge of facts sufficient to put them on inquiry, and also insisted that the proof did not tend to show that the defendants had knowledge of facts sufficient to put them on inquiry. The court held the contrary, and the defendants' counsel again excepted.

The jury found in favor of the plaintiff and from the judgment entered on their verdict an appeal was taken to the General Term, where the judgment was affirmed. No opinion appears to have been delivered at the General Term, and we are consequently unaware of the grounds upon which the affirmance was placed. Upon the facts appearing in the bill of exceptions it is difficult to understand upon what ground a recovery in this case could be had. By section 35 of the Bankrupt Act of 1867, which was in force at the time this case arose, it is provided, among other things, that if any person being insolvent, or in contemplation of insolvency, within four months before the filing of the petition by or against him, with a view to give a preference to any creditor or person having a claim against him, makes any payment, the person receiving such payment having reasonable cause to believe such person is insolvent and that such payment is made in fraud of the provisions of the act, the same shall be void and the assignee may recover from the party receiving it.

The thirty-ninth section declares what shall be acts of bankruptcy, which shall subject a debtor to involuntary bankruptcy, among which is the making of any payment with intent to give a preference to one or more of his creditors, and it closes with a general provision that if the debtor shall be adjudged a bankrupt, the assignee may recover back the

money paid, provided the person receiving such payment had reasonable cause to believe that a fraud upon the act was intended or that the debtor was insolvent. It has frequently been held that these sections must be construed together, and made to harmonize, and that the rights of the assignee to recover back money under the thirty-ninth section, are substantially the same as under the thirty-fifth. (*Hubbard* v. *The Allaire Works*, 7 Blatch. C. C. R., 284, 286.) But under both sections it is indispensable that the payments be made by the debtor, and with intent to give a preference to his creditor, and that the creditor have reason to believe at the time that the debtor is insolvent. By the amendment of July 22, 1874, it is made unnecessary under both sections that the creditor should also know that a fraud upon the act was intended. Whether this amendment is or not more than declaratory, in view of the decisions in *Wilson* v. *The City Bank* (17 Wal., 473), and *Clark* v. *Joslin* (21 id., 360), it is not material now to inquire, as it clearly appears in the present case that the payment was not made by the bankrupt, but by Foote, their surety. The bill of exceptions states that the defendant caused application to be made through Addington to Foote to make good the engagement he had entered into, and that afterwards Addington received of Foote $400 in money and Foote's note for $200, to pay to the defendants on the account of the Kings, which money and note Addington paid over to the defendants, and Foote aftewards paid his note.

It is true that it also appears that Foote had, after becoming security for the Kings, obtained from them a bill of sale of the stock in trade of the Kings, and sold it at auction, and that this $400 at least was part of the proceeds of the sale; but the money realized from the sale was Foote's money and not the bankrupts', whatever liability Foote may have incurred by receiving the bill of sale from the Kings for his indemnity against the obligations he had assumed for them. As to Foote's note of $200 it is difficult to conceive how the defendants could have violated any provision of the bank-

rupt act by receiving this from Foote, or by receiving payment of it at maturity. If Foote chose to give his note for the debt of the Kings and pay it, and to pay the residue of the amount for which he became security for them, I cannot see what obligation the defendants were under, before receiving these payments from Foote, to make inquiries as to the solvency of the Kings. That may have been a very important matter as affecting the dealings between the Kings and Foote by which Foote obtained their property, out of which he realized enough to pay the obligations he had assumed for them, but I cannot see what it had to do with the dealings between the defendants and Foote. The defendants had declined to look to the Kings for the $600, and Foote voluntarily agreed to become responsible for that sum. True, his undertaking not having been reduced to writing, he might have raised the question whether it was not a collateral one void by the statute of frauds. But if he chose to waive that question and pay the amount, I do not see that the defendants were in any way disabled from receiving it, or that they were concerned with the question how he obtained the money, so long as it was his money and he was not acting merely as agent of the Kings in making the payment with their money, a theory which cannot be sustained on the facts proved. It might have been the duty of the defendants to refuse to receive the money from the Kings if they knew they were insolvent, but when tendered by Foote, without any information as to the source whence it was derived, and in discharge of his own obligation, I think they did no wrong and incurred no liability by receiving it.

The only doubt which I entertain is whether the exceptions are taken in proper form to raise the material question. It does not appear that there was any motion for a nonsuit or any exception to the charge that the plaintiff could recover the $600, provided the defendants had knowledge of the fact that the Kings were insolvent at the time of the payment. But it does appear that the defendants insisted that the plaintiff could not recover the $600 they received on the

undertaking of Foote with them to cover the deficiency in the goods, and that they excepted to the decision of the court that the plaintiffs could recover that sum, provided they had knowledge of facts sufficient to put them on inquiry as to the solvency of the Kings. The portion of the charge excepted to was erroneous, and although other parts of the charge might also have been excepted to, the failure to except to them should not be held to cure the error in the part which was excepted to, it appearing that the right of the plaintiff to recover, in case knowledge of the insolvency of the Kings was proved, was not conceded but was disputed on the trial.

Both branches of the charge entirely omit all reference to the point that to entitle the plaintiff to recover the money paid it must have been paid with intent to give a preference. But the most conclusive ground, and the one upon which I prefer to place the judgment, is that the payment was not made by the debtor but by a third person in discharge of his own obligation.

The schedules of the indebtedness, made and verified by the bankrupts, were improperly admitted in evidence. The objection to their admissibility was placed upon the ground that they were immaterial. The purpose for which they were offered was not stated. They were certainly immaterial, unless offered for the purpose of showing the insolvency of the Kings, and if offered for that purpose they were not competent evidence against the defendants. Whether this exception was sufficient it is not necessary now to decide, as upon the point already discussed the judgment must be reversed.

The judgment should be reversed and new trial ordered, with costs to abide the event.

All concur.

Judgment reversed.