ROCHESTER PRINTING COMPANY, APPELLANT, *v.* LESLIE
C. LOOMIS AND OTHERS, RESPONDENTS.

*Banker — liability of, for receiving drafts when he knows himself to be hopelessly insolvent — right of the owner of the draft to recover it — admissibility of the inventory made by a general assignee to show the financial condition of the assignor.*

At about a quarter before four o'clock in the afternoon of December 19, 1882, the defendants delivered to one Moore, who had for some twelve years carried on business as a private banker at Victor, N. Y., and with whom the defendants had transacted their business, a draft drawn by the defendants to Moore's order. Moore placed the amount of the draft to the defendants' credit, paid to them the amount of a check then drawn by them, which overdrew their account as it stood before being increased by the amount of the draft then credited to them, and on the same evening mailed the draft to the City Bank of Rochester, which failed, however, before the letter reached it. The draft was, however, placed to Moore's credit on the books of the bank as of December nineteenth, his account being then overdrawn to the amount of $4,000. On the day after the City Bank failed a balance due from it to the plaintiff was paid by transferring to the plaintiff this draft with other securities. At the time Moore received the draft he was, and had been for a considerable time, utterly insolvent, and on the next day he made a general assignment for the benefit of his creditors.

In this action, brought upon the draft, the defense was interposed that the draft was obtained by Moore by means of false and fraudulent representations and concealment. Upon the trial the court submitted to the jury the single question of fact, whether or not Moore acted in good faith in the transaction in receiving the draft from the defendants, and held that if he did not the plaintiff ould not recover.

The court was requested by the plaintiff's counsel to charge that the defendants must show that Moore made false representations to them with intent to deceive them, and by that means procured the draft; that the defense could not be sustained unless the jury should find that the defendants were in fact deceived; that representations made to the world were not sufficient, that they must be made to the defendants.

*Held*, that the court properly refused to so charge.

Moore had testified that he did not hear of the failure of the City Bank until between seven and eight o'clock in the evening, and that up to that time he had no intention of making an assignment.

*Held*, that the court properly refused to charge that if Moore's failure was caused by the failure of the City Bank, and he did not know until 7.30 P. M of December nineteenth that he would be obliged to fail, and had no intention of failing up to that time, the defense could not be sustained.

Moore had testified that the president of the City Bank, one Upton, was carrying him, and had agreed to carry and help him through.

*Held*, that the court properly refused to charge that although Moore was

insolvent, and knew himself to be so, yet if he honestly believed that Upton was able to and would carry him through, and relied upon that belief, he was guilty of no fraud in taking the draft.

That it properly charged that a man cannot honestly carry on a banking business upon a mere promise of another to carry him without some security for the performance of the promise. (HAIGHT, J., dissenting.)

The court was requested to charge that if Moore paid on the defendants' check, on the strength of the draft, any sum of money at the time of its discount by him, the defense could not be sustained, because it did not appear that the money was returned or its return offered; and, also, that Moore was the owner of the draft to the extent of the money he paid the defendants, and that it was good at least for that amount in the hands of any person to whom it passed.

*Held*, that the court properly refused to charge as requested.

That the right to restoration was that of Moore only, and passed to his assignee in the event that the delivery of the draft and the credit given for its amount were repudiated, and that it did not pass to the plaintiff by the transfer made by Moore of the draft. .

It was claimed by the plaintiff that because the defendants called Moore as a witness they could not assert the incredibility of his testimony, and that, so far as it was uncontradicted by other evidence, it must be taken as true.

*Held*, that this position could not be maintained; that Moore's relation to the transaction involved was such as to make his credibility a proper question to be considered by the jury.

*Becker* v. *Koch* (104 N. Y., 394) followed.

Upon the trial an inventory or schedule made by the first assignee, and another inventory or schedule made by a second assignee, appointed upon the resignation of the first, were admitted in evidence, against the plaintiff's objection and exception, as bearing upon the financial condition of Moore. Moore testified that the books from which it appeared that the schedules were taken and made were his, and were accurately kept by him in his banking business, and that they correctly showed the accounts and the state of them up to one o'clock of December 19, 1882.

*Held*, that the evidence was admissible. (HAIGHT, J., dissenting.)

*People* v. *Moore* (37 Hun, 84) distinguished.

APPEAL from a judgment entered upon a verdict for the defendants, at the Monroe Circuit, and from an order denying a motion for a new trial made on a case and exceptions.

*John Van Voorhis*, for the appellant.

*W. H. Adams*, for the respondents.

BRADLEY, J :

The action is upon a draft drawn by the defendants, in their firm name of Loomis & Woodworth, upon E. S. Tatem, of Philadelphia,

of date December 19, 1882, for $983.63 which it is alleged was at its date by them delivered to William C. Moore, by him indorsed and delivered to Barnard, cashier, or order, and by the latter indorsed and transferred to the plaintiff, and that it was protested for non-acceptance. The defense alleged is, that the draft was obtained by Moore from the defendants by means of false and fraudulent representations and concealment by him respecting his financial condition, and that the plaintiff is not a *bona fide* owner or holder for value ; and the allegations of transfer to and title of the plaintiff are put in issue.

Moore had been doing business as a private banker at Victor, N. Y., for about twelve years. The defendants did business with him as such — they made deposits and drew checks upon his bank. This draft was delivered to him about three and three-fourths o'clock, P. M., of December 19, 1882, and at four o'clock the same day his banking office was closed, and Moore's banking ceased. He left Victor, and on the next day made a general assignment for the benefit of his creditors, and the drawee of the draft was by the defendants advised not to accept or pay it. The amount of the draft, less charges for exchange, etc., was by Moore placed to the credit of the defendants in their account with the banker, and it was the same evening mailed by him to the City Bank of Rochester, and before it reached there the latter bank had finally closed its doors and ceased to do business. The draft, however, was placed to the credit of Moore on its books as of date December nineteenth, against whom there in his account remained a balance of $4,000, after such credit.

At the time Moore received this draft he was and had been for considerable time utterly insolvent, and, as the jury were permitted to find, hopelessly so to his knowledge. His liabilities to depositors were $30,000, and all together his liabilities amounted to about $100,000, while his assets, as they finally turned out, were about ten per cent of that sum. He was authorized to suppose his condition was better than that, but not that he was solvent. He had been dependent largely upon the City Bank of Rochester for currency to support his banking business, with the president of which bank he had an understanding for aid in that respect, and when that bank failed he was unable to proceed longer with his banking business.

The plaintiff having a balance to its credit of $3,000 in the City Bank, was paid by it, the morning after its failure, such balance in securities, amongst which was this draft. The City Bank parted with nothing in consideration of the draft, but merely credited it in Moore's account. It was not nor was the plaintiff a *bona fide* holder of the draft. By each it was received on account of a precedent debt, and it was subject to any defense which the defendants could have made to it in the hands of Moore. It appears that a receiver was appointed of the property of the City Bank; and it is contended by the defendants' counsel that as the transfer of the draft by the bank to the plaintiff was in violation of the statute (1 R. S., 591, §§ 8, 9), the latter took no title. But whatever may be the right to it and its proceeds, as between the receiver and the plaintiff, that question is not available to the defendants. (*National Bank* v. *Whitney*, 103 U. S., 99.)

The trial court submitted to the jury the single question of fact whether or not Moore acted in good faith in the transaction of receiving the draft from the defendants, and held that if he did not the plaintiff was not entitled to recover. In other words, whether it was an honest transaction on the part of Moore, in view of his financial condition and his understanding of it, for him to take the draft from the defendants and assume the responsibility to them which he did by placing its amount to their credit on the books kept by him as a banker. The plaintiff's counsel took exception to the charge as so made, and to the refusal of the court to submit several propositions to the jury as requested, amongst which were the request to charge, that to establish the defense the defendants must show, that Moore made false representations to them with intent to deceive the defendants and by that means procured the draft; also, that the answer of the defendants could not be sustained unless the jury should find that they were in fact deceived; also, that representations made to the world were not sufficient that they must be made so to the defendants. The court had charged on that subject, substantially, that a banker by proclaiming himself as such, and ready to receive deposits of his customers, holds himself out as a man of sufficient means to meet the obligations he in that manner assumes; and if his condition was such, and he knew it, when he received a deposit in the course of

business with his customer, that he was likely to be incapable of meeting the demand for it, he was bound to disclose that situation before he received the deposit; that men assuming that relation cannot be permitted to take the money of their customers when they know that they are unable to repay and likely to be compelled to suspend; that mere insolvency does not necessarily render the receipt of money by a banker fraudulent; but insolvency which is hopeless and irremediable and renders him liable to shut his doors at any moment makes it improper for him to continue the business of taking deposits, without notice of his situation to customers; that the fact to be found is whether this deposit was received by Moore in good faith under circumstances which rendered it honest on his part to receive it, or whether it was dishonest and fraudulent towards his customers, the defendants, to receive it; that if a man is doing banking business fraudulently all the time it is not necessary that he should entertain a particular fraudulent intent in each particular instance in which he receives deposits; that if this transaction was fraudulent on the part of Moore, the defense is established, and that if it was honest on his part the plaintiff is entitled to recover. The charge as made covered the ground and stated fairly, we think, the proposition of fact which was for the consideration of the jury and to be determined by them to reach a result. The relation between a banker and his customers is in some degree confidential, and he, it must be assumed, understands that they make with him deposits upon the faith and reliance that he is financially able to pay their drafts upon him for an amount equal to their deposits. And the relation that he assumes in view of the nature of his business as such banker is, in practical effect, a representation on his part that he is able to do so. And if he is in an irretrievable condition of insolvency, so that he knows or has reason to suppose that he cannot meet the engagements he assumes when he takes the funds of his customers deposited to be placed to their credit, the transaction may involve an implied representation or concealment which characterizes it as fraudulent on the part of the banker. (*Anonymous*, 67 N. Y., 598; *Cragie* v. *Hadley*, 99 N. Y., 131.) The defendants had been customers of Moore in his relation of banker for several months. And their defense did not necessarily depend upon representations expressly made by him to them in

respect to his financial condition and ability, but might be implied from the relation he assumed as a banker, by means of which invitation was extended alike to them and others to open an account and deposit their moneys with him. It is true that deception was necessary to fraud, and unless the defendants were deceived they had no defense, but there is no evidence that they had any knowledge or information when they made this deposit that Moore was insolvent or was not responsible for all the obligations he assumed. And, therefore, in view of the charge as made the court was not required to further charge specifically that they must have been in fact deceived to constitute a defense. It may have been otherwise if the jury had been permitted to find that the defendants had any notice of the financial embarrassment of Moore at the time the deposit in question was made with him. There seems to have been no error in the refusal to charge those propositions as requested.

The court was also requested to charge the jury that if they believed the testimony of Moore that he intended and expected to go on in the business at the time he took the draft, no matter how poor grounds he had for that expectation, if he did so intend honestly, the defense could not be maintained : also, that if his failure was caused by the failure of the City Bank and he did not know until 7.30 o'clock P M. of December nineteen, that he would be obliged to fail, and had no intention of failing up to that time, the defense cannot be sustained, also, that if he honestly believed that Upton was able to and would carry him. although Moore was insolvent and knew it, if he relied upon that belief, he was guilty of no fraud in taking the draft. And to the refusal to charge those propositions, respectively, exceptions were taken. Moore had testified that he heard of the failure of the City Bank between seven and eight o'clock in the evening, and up to that time he had no intention of making an assignment; that Upton (who was president of the City Bank) was carrying him, and had agreed to carry and help him through. The expectation and intention of Moore, founded wholly upon the promise of Upton, resting in no legal obligation to perform it, may have been a matter properly for the consideration of the jury on the question submitted to them, but it was not necessarily sufficient to relieve Moore from the impu tation of inexcusable deception of his customers. It may be

that if the City Bank had not failed he would have obtained from it a supply to carry him along, and its failure may, in that view, have caused him to suspend business, and that he believed that he would, through Upton, be thus relieved.

These circumstances were not wholly excluded from the consideration of the jury. But the court did charge in that respect that a man cannot honestly carry on banking business upon a mere promise of another to carry him without some security for the performance of the promise. It will be observed that no legal duty had been assumed by Upton to provide Moore with currency to do his business. Good faith toward his customers required something more for its support than mere expectation that funds would be supplied to enable him to meet his obligations to his depositors. The expectation must be founded upon some right of property, or in some *legal* duty furnishing in a reasonable degree the right to suppose that his wants would be supplied, or that his demand for that purpose could be in some manner enforced. If A. should without capital open a banking office, and announce to the public by appearances that he is a banker, and proceed to receive the people's money on deposit, which he cannot and does not repay, it can hardly, in the legal sense, or necessarily be regarded as an honest enterprise on his part, merely because B. had given him assurance unsupported by liability, that he would furnish him money as he should from time to time need it. The situation represented by the banker is that of ability founded upon capital under his control to meet his engagements, and if he has it not, his customers are deceived and misled by the appearance he gives to his invitation for patronage. And this deception he has no right to produce whatever may be his hopes founded, neither on capital of his own, or upon any personal obligation of another which he has any power to command or enforce. At all events, whatever may be his hope or expectation under such circumstances, he would not necessarily be relieved from the charge of fraud in obtaining moneys which he has failed and is unable to repay. The request to charge called for more instruction to the jury than the court was required to give them.

It appeared that at the time of the delivery of the draft to Moore, the check of the defendants' for $365, was also presented for payment, and paid by him, and that the defendants' balance in their

account there, exclusive of the draft, was then $180.56 less than the amount of the check.

The court was requested to charge that if Moore paid on the defendants' check, on the strength of the draft, any sum of money at the time of its discount by him, the defense could not be sustained, because it does not appear that the money was returned or its return offered. Also, that Moore was the owner of the draft to the extent of the money he paid the defendants, and that it was good at least for that amount in the hands of any person to whom it passed. And to the refusal to charge those propositions, respectively, the defendants' counsel excepted. If the action had been brought by Moore, it may be seen that the defendants should have refunded to him or offered to pay the excess received from him of the amount of their balance, because the defense is founded upon a rescission of the transaction in respect to the draft for fraud. (*Baird* v. *Mayor*, 96 N. Y., 567); *Gould* v. *Cayuga Co. N. Bank*, 99 id., 333.) But the right to restoration was that of Moore only, and passed to his assignee in the event that the delivery of the draft and credit given for its amount are repudiated and did not pass by the transfer made by Moore of the draft. The defense, if effectual, goes to the draft entire; and as the plaintiff is not entitled, in any event, to the amount advanced by Moore, it is not in a position to assert the failure to return or offer to restore that amount as essential to the defense. So far as appears by the record, the right to that is in Moore's assignee, if recovery upon the draft is defeated. The defense can be supported upon the ground only, that the transfer of it to Moore was rendered wholly void by fraud. And, therefore, no right of action for any amount exists upon it. If this view is correct, those exceptions were not well taken.

The contention that because the defendants called Moore as a witness they cannot assert the incredibility of his testimony, and that so far as it is uncontradicted by other evidence it must be taken as true, and the exceptions founded upon those propositions are not supported. His relation to the transaction involved is such that his credibility was properly a question for the jury, notwithstanding the fact that he became a witness at the instance of the defendants. (*Becker* v. *Koch*, 104 N. Y., 394.) There was no evidence to permit the conclusion that the

City Bank was a *bona fide* holder of the draft, and there was no error in the refusal to submit that question to the jury. It was sent by Moore to apply upon his account there, and was credited to him accordingly by way of application upon an existing balance against him at the bank. There is no opportunity furnished by the evidence to say that the City Bank parted with any money or assumed any obligation upon the faith of this draft. Nor would the jury have been justified in finding that the plaintiff was a *bona fide* holder of it. As did the bank, the plaintiff received it on account of a precedent debt and parted with no security it then had. (*Phœnix Ins. Co.* v. *Church*, 81 N. Y., 218; *Noel* v. *Murray*, 13 id., 167.)

The assignee of Moore made an inventory or schedule, because the assignor failed to do so. (Laws 1877, chap. 466, § 3, sub. 5, as amended Laws 1878, chap. 318.) And having resigned another person was substituted as such assignee, who also made a schedule of the assigned property. Objections and exceptions were taken to the reception of these schedules in evidence. At the time they were offered and received their admissibility was somewhat questionable, but we think with what then appeared the evidence subsequently introduced sufficiently tended to verify the schedules as correct, and in that view the question presented at the time they were introduced, was one of order of proof. When the question of the competency of these schedules was before us in *People* v. *Moore* (37 Hun, 84), some of the evidence here, quite material, as bearing upon the correctness of those schedules was wanting, and the remarks there made upon the question are not necessarily applicable here. This evidence was introduced as bearing upon the financial condition of Moore. And he testified that the books, from which it appears the schedules were taken and made were his and were accurately kept by him in his banking business, and that they correctly showed the accounts and the state of them up to one o'clock of December 19, 1882. The objection, as made, did not require the production of the books of Moore. We have examined all the numerous exceptions, not specifically referred to, and think there was no error upon the trial to the prejudice of the plaintiff, and that the verdict is fairly supported by the evidence.

The judgment and order should be affirmed.

SMITH, P. J., concurred.

HAIGHT, J., dissented upon the grounds that it was error to charge as a matter of law that "a man cannot honestly carry on the business of banking upon a mere promise of another to carry him." (*Schufeldt* v. *Schnitzler*, 21 Hun, 462, 465), and that the schedules were improperly admitted as evidence against the plaintiff. (*Tyler* v. *Brock*, 68 N. Y., 418 ; *Turner* v. *See*, 57 id., 667 ; *People* v. *Moore*, 37 Hun, 84, 95.)

Judgment and order affirmed.