Philip Becker et al., Assignees, etc., Respondents, *v.* Henry H. Koch, Sheriff, etc., Appellant.

Exceptions herein were ordered to be heard at first instance at General Term, and upon argument there an order was made denying motion for new trial, overruling the exceptions and directing judgment on the verdict. Defendant appealed from the order and from the judgment entered thereon. Plaintiffs claimed the order was not appealable, and that the appeal from the judgment brought up nothing for review but the question whether the judgment was in accordance with the order, as there was no statement in the notice of appeal that the appellant

---

intended to bring up for review an intermediate order as required by the Code of Civil Procedure (§§ 1301, 1316). *Held,* that the order was not an intermediate order, within the meaning of the Code, and that while the appeal therefrom was useless, yet, as it was taken in connection with the appeal from the judgment, it was not necessary to dismiss it, as the latter brought up all the exceptions for review.

In an action by assignees for the benefit of creditors, to recover possession of property covered by the assignment, which had been levied upon by defendant as sheriff, by virtue of an attachment against the assignor, the defendant alleged the assignment to be fraudulent and void as to creditors. On the trial defendant called the assignor as a witness, and after he had testified to facts and circumstances, from which an inference of fraud could properly be drawn, he gave an explanation thereof, which, if true, was sufficient in law. Defendant then rested, and the court directed a verdict for plaintiff, on the ground that defendant was bound by the explanatory ·vidence, for the reason that he could not discredit or impeach his own witness. *Held,* error; that the witness was to be regarded as adverse to the party calling him, and the same credit was not necessarily to be given to the testimony against that party, as to that in his favor; and that it was a proper question for the jury as to what degree of faith should be given under the facts of the case to the explanatory testimony.

*It seems* the rule prohibiting a party from impeaching his own witness applies only to prevent, *First.* The calling of witnesses to impeach the general character of the witness. *Second.* Proof of prior contradictory statements by him. *Third.* A contradiction of the witness by another when the only effect is to impeach and not to give material evidence upon any issue in the case.

*Branch* v. *Levy* (46 Sup C. R. [14 J. & S.] 428), overruled.

(Argued January 25, 1887; decided March 1, 1887.)

Appeal from judgment of the General Term of the Superior Court of the city of Buffalo, in favor of plaintiffs, entered upon an order made May 9, 1885, which, after reciting that a motion had been made for new trial, ordered to be heard at first instance at General Term, denied said motion, overruled the exceptions, and directed judgment on a verdict; also appeal from said order.

The nature of the action and the material facts are stated in the opinion.

*Charles B. Wheeler* for appellant. A debtor who makes a general assignment for the benefit of his creditors must

devote all his property to the payment of his debts, and the withholding of any sum of money at the time of making the assignment from the assignee must in some form be explained, otherwise it is sufficient to establish a fraudulent intent. (*White* v. *Fagan*, 18 N. Y. Week. Dig. 358; *Schultz* v *Hoadland*, 85 N. Y. 464.) Courts do not require in cases of this kind the most conclusive proof of fraud. (Bump on Fraudulent Cont. 602.) A verdict having been ordered for the plaintiffs upon the trial, on the ground that there was no evidence showing that the assignment in question was fraudulent and void, the appellant is entitled to the most favorable view of which the evidence is susceptible, to determine whether there was any evidence from which the jury could properly have found the fraud alleged. (*Second Nat. Bk.* v. *Dix,* 3 East. Rep. 595.)

*Baker & Schwartz* for respondents. It is the duty of the court at the close of the party's proof, to direct a verdict against him if he has failed to show a case or defense, or whose evidence is so slight that it would be the duty of the court to set aside a verdict in his favor. (*Herring* v. *Hoppock*, 15 N. Y. 409, 413; *People ex rel. Peck* v *B'd of Police*, 14 Abb. 158, 159; *Goelet* v. *Ross*, 15 id. 251; *Barrett* v. *First Ave. R. R. Co.*, 1 Sweeny, 568; *Shirley* v *Vail*, 38 How 406; Bailey's Trial Pr. 228, 229.) Defendant calling as a witness the alleged perpetrator of the fraud, and examining him with reference to his assignment, so far as he thought it to his advantage, irrevocably assured the court that he was a person entitled to be believed as a witness, and, therefore could not impeach him. (Penal Code, § 587; *Lawrence* v. *Barker*, 5 Wend. 301; *Branch* v. *Levy*, 46 N. Y. Supr Rep. 428; 1 Greenl. on Ev., § 442.)

PECKHAM, J. This action was brought by the plaintiffs as assignees for the benefit of creditors of one Exstein, to recover from the defendant the possession of some personal property amounting in value to about $4,000, or in default thereof to recover such value.

Opinion of the Court, per PECKHAM, J.

The defendant justified the taking of the property by virtue of a writ of attachment issued to him as sheriff of Erie county, in an action in which Victor and others were plaintiffs and Exstein was defendant, and under which writ the sheriff had levied upon this property as belonging to the said Exstein. The assignment to plaintiffs was made on the 17th of October, 1883, and included the property in question. The attachment was on the fourteenth of November levied on the property, and after the plaintiffs in the attachment suit recovered judgment against Exstein, the property was sold on an execution issued thereunder to the defendant. The answer in this action set up these facts and alleged that the assignment to the plaintiffs was made with the intent on the part of Exstein to hinder, delay and defraud his creditors. The action came on for trial in the Superior Court of Buffalo, and after the evidence was all in, the court directed a verdict for the plaintiffs for a return of the property to them or for the value thereof, assessing the same at $3,800. A stay of proceedings was granted and the defendant's exceptions were ordered to be heard at the General Term in the first instance.

The General Term after argument of such exceptions overruled the same and directed judgment for the plaintiffs on the verdict. Thereupon an order was entered, which in form treated the defendant as having made a motion for a new trial on the exceptions ordered to be heard in the first instance at General Term, and after reciting such fact continued thus : " Ordered that such motion be and the same hereby is denied with costs; that the said exceptions be and the same hereby are overruled and judgment for the plaintiffs on the verdict is hereby ordered."

Judgment in accordance with the order was subsequently entered.

The defendant then appealed from the order above mentioned to this court, and also from the judgment entered upon such order.

The plaintiffs now make the claim that the appeal from the order should be dismissed, and that the appeal from the judg-

ment brings up nothing for review but the question whether the judgment appealed from is in accordance with the order of the General Term, as there was no statement in the appeal from the judgment that the appellant intended to bring up for review any intermediate order, as pointed out by sections 1301 and 1316 of the new Code.

There is no foundation for the claim. The exceptions of the appellant were ordered by the trial court to be heard in the first instance at the General Term, and it was pursuant to such direction that the argument of such exceptions was then had, and the decision of the court upon such argument was made in the form of an order, and that order was simply a written authority upon which to enter the judgment, and was not such an intermediate order as is referred to in section 1301 or 1316, and no appeal would lie from it to this court. But after the entry of judgment an appeal from such judgment brings up for review the exceptions taken by defendant upon the trial.

The appeal taken by defendant from the order, as well as from the judgment, was useless, but evidently taken from more abundant caution, and if that were the only appeal in the case it would have to be dismissed as unauthorized, yet as it is taken in connection with the appeal from the judgment which brings up all the exceptions for review, there is no necessity to formally dismiss the appeal from the order. But upon the merits of the appeal, quite an important question arises in relation to the law of evidence.

The court directed a verdict for the plaintiffs, and if, therefore, there was evidence enough to authorize a submission of the question of fraud to the jury the judgment must be reversed. We think there was, and had it not been for the rule of law adopted by the court below we suppose that court would have been of the same opinion. That rule was that as the defendant called a witness by whom he attempted to prove the fraud, and as that witness denied it, the defendant was bound by that denial, in the absence of contradiction by some other witness, even though the jury might think some

parts of the evidence of the witness clearly showed its existence.

To show exactly how the question arose and what was decided by the court, some reference must be made to the testimony, although it will be unnecessary to allude to it all.

The assignor, Exstein, was a merchant engaged in a large business in Buffalo. He kept regular books of account in his business, which were produced upon the trial, and he was called as a witness for the defendant and gave evidence in relation to the books and upon other matters.

His assignment was made on the seventeenth of October, and on the sixteenth of that month he made entries in several accounts which he kept, crediting quite large sums of money to the different persons named in such accounts, the result of which entries was to cause it to appear by the books, that the assignor was in their debt to a somewhat large amount, while, if the entries as of the sixteenth of October were stricken out, it would then appear that the parties instead of being creditors were in reality debtors of the assignor. When on the stand, he substantially stated that if those entries were stricken out, the state of affairs between himself and those persons would be as represented in the books, or in other words, that excluding those entries and the circumstances upon which they rested, some of these persons would be his debtors. He also said that these entries did not, in fact, represent any actual transaction occurring at the time when they were made, and that no valuable or other consideration passed between him and those parties at such time. Stopping with these facts, it would appear then that credits were given these persons the day before the assignment, upon which some of them drew out moneys from him, and upon the basis of which one was made a preferred creditor in the assignment, and yet such entries represented no actual, present transactions happening at the time when they were made.

Unexplained, it would appear that, as a result, Exstein had provided for the payment of large sums of money, or had already, and in view of his assignment, paid such sums to

persons whom he did not owe, or, in other words, he had paid and also made provision in his assignment for the payment of fictitious debts.

The defendant, however, proceeded with his examination of this witness, and asked for an explanation of these entries, and the facts or circumstances upon which they were based, and the witness proceeded to give it. The explanation was, if true, sufficient in law, and showed that he did owe the persons the amounts he claimed to, with the possible exception of one or two cases in which the defendant claims that even on the basis of the general truth of the explanation, the witness had charged himself in reality with more than he owed. The defendant then rested, and the plaintiffs, with the evidence in this state, asked for a verdict in their favor by the direction of the court, and obtained it.

The court held, in substance, that the books of the witness Exstein showed a *prima facie* case of an indebtedness of the witness in the amounts therein appearing, and to the persons therein mentioned, and the witness said they were correct. He then stated what has already been alluded to as to those entries made on the sixteenth of October, and continued by explaining the facts upon which they were based. This explanation, the court said, was totally uncontradicted by any other witness, and defendant was, therefore, bound by what Exstein said on that subject, for the reason that he could not discredit or impeach him, and must take what he said as, under the circumstances of the case, true.

If that were the true rule, the court was correct in directing a verdict. The General Term, it must be presumed, also took the same view of the case in directing judgment for the plaintiffs, without delivering any written opinion.

The general rule prohibiting the impeachment or discrediting of a witness by the party calling him was extended too far in this case. Here was an issue of fraud in the making of an assignment by the assignor, and the defendant, in order to prove its existence, called the very man as a witness whom he alleged was guilty of the fraud. He might

well be regarded, therefore, as an adverse witness, whom the party by the exigencies of his case was obliged to call.

With regard to such witnesses it is well settled that all the rules applicable to the examination of other witnesses do not in their strictness apply. An adverse witness may be cross-examined, and leading questions may be put to him by the party calling him, for the very sensible and sufficient reason that he is adverse and that the danger arising from such a mode of examination by the party calling a friendly or unbiased witness does not exist.

What favorable facts the party calling him obtained from such a witness may be justly regarded as wrung from a reluctant and unwilling man, while those which are unfavorable may be treated by the jury with just that degree of belief which they may think is deserved, considering their nature and the other circumstances of the case.

Starkie, one of the ablest and most philosophical of English writers on this branch of the law, in speaking of a reluctant or adverse witness, uses almost the precise language above stated and which has been substantially quoted from him. (Starkie on Ev. [9th ed.], m. p. 248.) Sometimes rather loose language has been indulged in to the general effect that a party cannot impeach his own witness, but when an examination is made as to the limits of the rule the result will be found to be that it only prohibits this impeachment in three cases, viz.: (1) the calling of witnesses to impeach the general character of the witness; (2), the proof of prior contradictory statements by him; and (3), a contradiction of the witness by another where the only effect is to impeach and not to give any material evidence upon any issue in the case. (*Lawrence* v. *Barker*, 5 Wend. 301–305; *People* v. *Safford*, 5 Den. 112; *Thompson* v. *Blanchard*, 4 N. Y. 303–311; *Coulter* v. *Express Co.*, 56 N. Y. 585; 2 Starkie on Ev. [9 Am. ed.], m. p. 244–250; 2 Phil. on Ev. [C. and H. & Ed. notes], m. p. 981, 982, 983 and note 602; 1 Green on Ev., § 442.) In regard to the first class the rule has been stated to rest upon the theory that when a party calls a witness he pre-

sents him to the jury as worthy of belief, and to allow him to call witnesses thereafter to impeach his general character as a man, would be to permit an experiment to be made upon the jury by producing a person as worthy of belief (whom he knows and has witnesses to prove to be the contrary), and if his evidence be favorable, to get the benefit of it, and if the reverse, to overwhelm it by the impeaching witnesses.

In such a case as this, however, there is no deception. The defendant calls the very man he accuses of the fraud as a witness to prove it and says, in effect, to the jury, that such evidence as the witness gives which tends to show the perpetration of the fraud alleged is forced from him by the exigencies of the case and the surrounding facts which cannot be denied, while that which he gives that looks towards an explanation of the fraud the jury shall give such faith to as under all the facts in the case they may think it entitled to.

As to the second class, in which an impeachment is forbidden, the authorities in England were in conflict, many of the judges thinking it allowable to prove prior contradictory statements by a witness, but the weight of authority was against it, thereby creating the occasion for an interference by the legislature with the law of evidence, which passed an act permitting just such evidence under certain restrictions. (See C. L. Pro. act of 1854, 17 and 18 Vic., chap. 125, § 22.) The non-admissibility of such evidence in the courts of this State is, of course, not open to discussion. It is alluded to only to show the opinion of the English Parliament (in matters of this nature almost exclusively guided by lawyers), upon this question of impeaching one's own witness, and the readiness of that body to alter the law of evidence in the direction of what seemed to it greater opportunity of ascertaining and administering that for which all courts are instituted, viz., truth and justice.

The third of above classes, where no impeachment is allowed, is plainly set forth in several of the cases and text-books above cited.

It is not admissible, even in the case of a witness called by the other side, to impeach him by proof of prior contradictory

statements on immaterial or collateral issues, and there is not much difference in the two cases, and, therefore, no reason why it should be allowed with reference to one's own witness. But all 'the cases concur in the right of a party to contradict his own witness by calling witnesses to prove a fact (material to the issue) to be otherwise than as sworn to by him, even when the necessary effect is to impeach him.

Why should not the right exist to show that a portion of the evidence of your own witness is untrue, by comparing it with another portion of the evidence of the same witness and with the other facts in the case?

The courts below say, in effect, that although a portion of Exstein's evidence shows that he provided for payment in his assignment for fictitious debts, yet the other portion of his evidence (if believed) shows that such debts were not fictitious, and although the defendant was at liberty to call other witnesses to prove that the explanation was false, yet as he did not do so, the explanation must stand as matter of law, and he cannot be heard to contend that it is proved false by its own absolute and inherent improbability. We do not believe, at least in such a case as this, that the rule goes to any such length.

The plaintiffs cite the case of *Branch* v. *Levy* (46 Sup'r Ct. Rep. 428) as upholding the rule laid down by the trial court. The plaintiffs there brought an action to recover damages from defendants for the non-delivery of coupons bought from defendants' agent, as plaintiffs claimed, but defendants denied the agency and alleged they had sold the coupons to the person whom plaintiffs alleged was their agent, and had no liability for his subsequent acts. On the trial the plaintiffs sustained their claim *prima facie* by certain letters and circumstances, which, as the court said, in the absence of explanation by defendants, made a question for the jury. The plaintiffs then, for some inexplicable reason, called one of the defendants who swore that the person selling the bonds to the plaintiffs was not the agent of the defendants, but that they had simply sold him the bonds. The court held the plaintiffs concluded by this evidence and

that they must take it as wholly credible; that credibility could not be divided, and that it was attached to the moral character.

That case comes very near the one under discussion, and it is hard to see why the plaintiffs should not have been allowed to go to the jury upon the whole of their case, letters, documents and explanation, and why they should not have been allowed to ask the jury to believe the documents and letters and reject the explanation as in their judgment untrue. To say that credibility is a part of the moral character and indivisible, is to run counter to the well-established rule as to adverse witnesses above referred to, whose testimony you may ask a jury to believe in part and to disbelieve the residue. The case ought not to be followed.

It is a good general rule that the credibility of a witness is matter for the jury, and the fewer technical obstructions there are to the practical operation of that rule the better.

We think that the whole evidence of Exstein in this case should have been submitted to the jury for them to pass upon its credibility, and that they were at liberty to believe that portion which tended to show the debts to be fictitious and to disbelieve the explanation, or that they might regard it as sufficient, just as in their judgment, intelligently and honestly exercised, they might determine.

Of course we do not mean by this decision to give any intimation as to which view should be taken by the jury, we only decide that it was a question for them and not the court.

The judgment should be reversed and a new trial granted, costs to abide the event.

All concur.

Judgment reversed.