OLIVE ARMS, Respondent, *v.* WILLIAM D. ARMS, as Executor, etc., Appellant.

*Court of Appeals, April* 16, 1889

Affirming 47 Hun, 632.

1. *Promissory note.*—In an action on a promissory note, a *prima facie* case is made out for the plaintiff, where the signature on the note has been proved by a witness who is familiar with the handwriting of the alleged maker, and testifies to his belief that it is genuine, or where it is substantially admitted.
2. *Same.*—After such *prima facie* case is made out, unless there is some evidence given on the part of the defendant which legitimately tends to show that the note is not genuine, the *prima facie* case upon this point is not disturbed, and there is no issue of genuineness to be submitted to the jury.
3. *Evidence. Forgery.*—Evidence that a note may have been obtained from the maker under such circumstances as would have rendered it void, has no bearing upon the issue or defense of forgery.
4. *Witnesses. Adverse party.*—The defendant by taking the testimony of plaintiff before, and reading it on, the trial, does not thereby make the plaintiff his witness, and is not bound by the evidence.
5. *Evidence. Suspicion.*—Mere suspicion is not enough to warrant the submission of the question of forgery to the jury.
6. *Same.*—In an action on a promissory note, where the defense of forgery is set up in the answer, evidence that it was the custom of the alleged maker of the note to sign instruments some little distance below the last of the writing, is of the vaguest and weakest possible nature, even if it is strictly admissible.

7. *Same.* *Declaration.*—The subsequent will of the alleged maker of the note, not offered for the purpose of putting in evidence an instrument containing a genuine signature of the alleged maker with which to compare the signature to the note, was a declaration or act of the maker with which the plaintiff had nothing to do, and was properly excluded on the offer of the executor.

8. *Same.* *Incompetent.*—And the fact that the said will contained no provision for the payment of the note in question was incompetent evidence against the plaintiff.

9. *Same.* *Oral evidence.*—Evidence of an oral agreement is proper, when given, not for the purpose of proving a substantive agreement not in writing, but for the purpose of showing what was the consideration of the written instrument upon which the action was brought.

Appeal from a judgment of the general term of the supreme court, affirming a judgment entered upon a verdict.

*Watson M. Rogers,* for appellant.

*Levi H. Brown,* for respondent.

PECKHAM, J.—The only question, as we think, in this case is whether it should have been submitted to the jury to decide upon the genuineness of the note sued on by the plaintiff. The court did submit to the jury the question whether there was any consideration for the note, and charged that unless it were given pursuant to an agreement made prior to, and in contemplation and consideration of marriage, although executed subsequent thereto, the note was without consideration and was void. The proof in regard to the execution of the note, when the plaintiff first rested, was that of a witness who was entirely familiar with the handwriting of the alleged maker, and who testified to his belief that the signature at the end of the note was genuine. The counsel for the defendant then upon being asked stated that they did not intend to give any evidence on the question of handwriting, and the plaintiff's counsel called no other witness on that point. The defendant's counsel added that they disputed the execution of the

paper.  It was admitted that the body of the note was in the
handwriting of the plaintiff.  The signature of the note
being thus proved, and substantially admitted, a *prima
facie* case was made out, and the plaintiff rested.

Unless there was some evidence given on the part of the
defendant which legitimately tended to show that the note
was not the genuine note of the decedent, the *prima facie*
case of the plaintiff upon that point was not disturbed, and
there was no issue of genuineness to be submitted to the
jury.  The announcement of the counsel for the defendant
that they disputed the execution of the note, taken in con-
nection with the substantial admission of the genuine char-
acter of the signature to the same, clearly indicates that
they meant to prove, or give evidence upon the subject of
the forgery of the note—not as to the signature, but as to
the fact that a note had been written over the signature
without the knowledge of the alleged maker.  Forgery (so
far as this branch of the case goes) was the defense, in sub-
stance, which was to be made, and upon which evidence
was to be given.

We have looked in vain through the case for some evi-
dence upon which the jury could legitimately be asked to
infer such forgery.  There is nothing which is stronger
than the vaguest suspicion—a mere guess that possibly it
was so, but no evidence of such fact or of any fact from
which the main one would be a fair or natural inference.
The note may have been obtained from the maker under
such circumstances as would have rendered it void, but
such evidence would have had no bearing upon the forgery
issue.

In order to prove his case, the defendant showed that
the alleged maker had been engaged in moving from one
house to another on the day on which the note purports to
be signed, and from seven o'clock in the morning until late
in the afternoon he was shown to have been so engaged
that it would have been (as is claimed) difficult to have

signed a note without being seen. But he had only to sign his name. The body of the note, it is admitted, was in the plaintiff's handwriting, and certainly it does not take a very long time to sign one's name, and his name may have been signed before seven o'clock, or at some time during the day when the witnesses who were sworn were not at that moment present. Because they did not see him sign it, is not the least evidence that it was not signed by him.

It was also shown that the defendant was about eighty-seven years of age and lived in the same village with his son, in whom he apparently had confidence, and with whom he was accustomed to advise on business matters, and that he said nothing to him about such a note. The ante-nuptial agreement, which was in writing and omitted all mention of the $1,000 note, was put in evidence and showed, as defendant says, that the only consideration for the marriage was the execution of the $300 note by the decedent. It is said, also, that the fact of the execution of the $1,000 note was not spoken of by plaintiff, excepting to one person, during the lifetime of the defendant. This is in substance all the evidence of forgery that was given. The execution of the note having been proved by proof of the handwriting of the maker, the genuine character of which was admitted, we are unable to say that there was evidence enough bearing upon the question of forgery to submit it to the jury. Whether the note was obtained through fraud or deceit is a totally different question, and one which was not withheld from the jury, as the court submitted to them the question whether the note as signed was for any reason not valid. This included the question of the alleged want of consideration.

The defendant took the evidence of the plaintiff before trial, and it was read in evidence on the trial; and in her deposition she swore to the genuineness of the note and to the consideration therefor, and that it was a valid and fair

note. The plaintiff claimed on the trial that as the defendant had called the plaintiff, and taken her evidence, he was bound by it. We do not think so. The cases of Becker v. Koch (104 N. Y. 394), and Cross v. Cross (108 N. Y. 628), are conclusive on the point. The plaintiff also gave some additional evidence as to an admission of the defendant to a witness that he had given such a note. The strength of plaintiff's case, however, consisted in the absence of evidence of any forgery upon the part of the defense. We cannot say that the case was free from suspicion, but mere suspicion was not enough to submit the question of forgery to the jury.

The defendant's counsel also offered to prove by the defendant that is was the custom of his father, the alleged maker of the note, to sign instruments some little distance below the last of the writing; but it was excluded. Such evidence is of the vaguest and weakest possible nature, and even if strictly admissible, we do not think that added to the other evidence there was enough to carry the case to the jury upon the issue of forgery.

There was no error in excluding the will of the alleged maker of the note. It was not offered for the purpose of putting in evidence an instrument containing a genuine signature of the defendant with which to compare the signature to the note, for the latter signature was also admitted to be genuine. It was a subsequent declaration or act of the maker with which the plaintiff had nothing to do, and which could in no way bind her. The fact that it contained no provision for the payment of the $1,000 note was incompetent evidence as against the plaintiff; and hence the will was properly excluded.

The evidence of the alleged oral agreement was given, not for the purpose of proving a substantive agreement not in writing and made upon consideration of marriage. It was given for the purpose of showing what was the consideration of the written instrument then in the hands of

the plaintiff and upon which the action had been brought. Such evidence has always been held proper. It did not contradict the ante-nuptial written agreement. It simply showed other considerations than those named therein, for the marriage.

We are unable to see that any legal error was committed on the trial, and the judgment must therefore be affirmed, with costs.

All concur.