(28 App. Div. 365.)

### HARD v. DENSMORE et al.

(Supreme Court, Appellate Division, First Department. April 22, 1898.)

1. ACCOMMODATION NOTE—EVIDENCE.

In an action upon a promissory note made by defendant D. to the order of defendant P., there was evidence that the maker was the owner of a commercial article, and had agreed to give P. $100 a month out of the sales thereof as long as they reached a certain yearly amount; and that, when the note in question was given by D. to P., the latter executed to D. a release of the annuity, on the understanding that, if P. paid the note himself, he should be reinstated in the annuity, but otherwise not. *Held*, that this would have warranted the jury in finding that the note was not given as a consideration for the release, but that the release was given as collateral security to the maker of the note, and hence, there being no other evidence of consideration, that the note was given for P.'s accommodation.

2. SAME—CONSIDERATION—EVIDENCE.

The defendants set up that the note was not only an accommodation one, but had its inception in aid of a lottery. It appeared that the payee turned the note over to one B., an indorsee, for $15,000, for use, as was claimed, in developing a certain "N. B. Art Union Company." To prove the character of this company, defendants offered its charter, showing that it was organized to distribute art works by lot among members and ticket holders of each drawing. This charter was excluded as immaterial and irrelevant. *Held* error.

3. SAME.

Defendants also offered a paper addressed to the payee of the note, and signed by P., the indorsee, who testified that he gave it after he got the money for the note, and that it referred to that money, which money stated that "this is to certify that I have in my possession $15,000, which sum is being held by me for the use and benefit of the N. B. Art Union Company." This was rejected as immaterial and incompetent. *Held* error.

Appeal from trial term.

Action by George M. Hard against Emmet Densmore and another. From a judgment entered on a verdict, and from an order denying a new trial, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, PATTERSON, and O'BRIEN, JJ.

James L. Bennett, for appellants.
Delos McCurdy, for respondent.

RUMSEY, J. The action was brought upon a promissory note for $15,000, made by the firm of E. & H. Densmore, to the order of H. Pennock, which had been transferred to and indorsed by one C. R. Bissell, and which subsequently in some way came into the possession of the

plaintiff, who brought this action upon it.   The defense was that the note was given Pennock as an accommodation note, for the sole purpose of being used by Pennock in connection with Bissell and others, in aid of a certain lottery, and for that reason that it was void.   The questions of fact arising upon the evidence were submitted to the jury, who found a verdict for the plaintiff.   After the verdict had been rendered, a motion for a new trial was made upon the judge's minutes, which was denied, and judgment was subsequently entered.   From the judgment thus entered, and from the order denying a new trial, this appeal is taken.

Before the defendants could succeed in their defense, it was necessary that they should establish that the note had its inception in aid of a lottery, as it was alleged, because if it appeared that the note was given by the Densmores to Pennock for a valuable consideration, so that it was an existing and operative security in Pennock's hands, which he might have enforced, it makes no difference what use was made of it subsequently.   Tracy v. Talmage, 14 N. Y. 162.   The plaintiff claims that upon this point the evidence was conclusive, and that the court was bound to hold as a matter of law that such was the effect of the proof.   If that be so, it is of no importance whether errors were committed in rejecting testimony upon other branches of the case, because, if the defense totally failed upon this point, the plaintiff would have been entitled to a verdict, no matter what other evidence there was.   The only persons who gave any testimony on the question of the consideration for the note were Densmore, the maker, and Homer Pennock, the payee.   Densmore testified that Pennock came to him, and said that he would like to get Densmore to accommodate Pennock with a note for $15,000, and that he (Densmore) finally gave the note in compliance with that request.   He was asked whether, at the time he signed the note, he meant to pay it, to which he answered he had no idea of paying it, because Mr. Pennock assured him that he would pay the note, and the assurances were so strong that he (Densmore) had no expectation of being obliged to pay it.   The necessary inference from this testimony, had it been uncontradicted, would be that the note was given by Densmore for Pennock's accommodation, for in no other event could Pennock be first liable to pay it.   It appeared, however, upon the cross-examination of Densmore, that he was the owner of an article called "Garfield Tea," and that he had given to Pennock an agreement by which Pennock was to receive $100 a month out of the sales of that tea so long as the sales reached a certain amount yearly.   Densmore stated further, upon his cross-examination, that, shortly before the $15,000 note was given, Pennock had released his annuity.   When he was asked whether the release was in consideration of the giving of the note, he said, "No;" that the consideration which prompted him to give the note was his friendship for Pennock.   With regard to the release, he said that he recollected clearly receiving the paper waiving his interest, by which he meant the release; but whether permanently or collaterally he had no definite recollection.   Pennock's deposition was taken conditionally, and in that he was asked about the release. It would seem to appear from the case as made up that his testimony

on that subject was not read to the jury by the counsel, but it does appear that some portion of it was read to the jury by the court at the end of the charge, and in that testimony Pennock said that he gave Densmore the release, with the understanding that, if he paid the note, he was to continue to get the $100 a month, but if he defaulted, and Densmore had to pay it, he would be released. He again put it: "If I paid the note, I was to be reinstated. That was my understanding. If he had to pay, why, then, of course, I gave up all claim to the $100 a month." It is perfectly evident from this testimony that the $15,000 note was not given as a consideration for the release of Pennock's annuity, but that the release was assigned to Densmore simply as collateral security, to be used by him in case he was compelled to pay the note which he had made for Pennock's accommodation. The jury, therefore, might well have found upon this testimony that the note was given for Pennock's accommodation.

In addition to that fact, the defendants, to establish their defense, were bound to prove that the note was used by Pennock in aid of a lottery, and therefore it was void, under the provisions of the Revised Statutes (2 Rev. St. [9th Ed.] p. 1766, § 38). It was not disputed that Pennock turned the note over to C. R. Bissell for the sum of $15,000, and it was claimed by the defendants that that sum of $15,000 was to be used by Bissell pursuant to an agreement between himself and Pennock, for the purpose of developing the New Brunswick Royal Art Union Company. The defendants claim that the New Brunswick Royal Art Union Company was a lottery organized in the Province of New Brunswick, but which was to be exploited in the state of New York and the other states of the Union. These facts the defendants attempted in various ways to prove. They offered in evidence the charter of the New Brunswick Royal Art Union Company, from which it appeared that that company was organized for the purpose of the distribution of works of art by lot and allotment among the members and ticket holders of each drawing, which made it purely a lottery, within the case of Governors of Alms House of New York v. American Art Union, 7 N. Y. 228. This charter was excluded upon the express ground that it was incompetent, irrelevant, and immaterial. Any objection upon the ground that the charter was not properly authenticated was expressly waived, but the objection was sustained upon the ground stated that it was immaterial and irrelevant. The defendants then offered to prove by Pennock the purpose for which this Royal Art Union was organized; and that evidence was also objected to, upon the same grounds, and that objection was sustained, and the defendants again excepted. Just at the close of the case, the charter of the Royal Art Union was again offered in evidence, and was again objected to, as incompetent and immaterial, and the objection was sustained, and the defendants excepted. It was an essential part of the defendants' case to prove that this Royal Art Union was essentially a lottery, for that fact lay at the foundation of their defense. That fact, however, they were not permitted to prove, the court holding that it was immaterial and incompetent. This ruling of the court was clearly error. It needs no discussion to establish the fact that when the claim was made that this note was to be used in developing

the Royal Art Union, and that that corporation was organized, in substance, to carry on a lottery, a failure to prove that the object for which the corporation was organized was illegal was fatal to the defendants' case, and the defendants clearly, therefore, should have been permitted to make that proof. It is said that there is no evidence that the lottery was to be carried on in this state. Precisely. There could be none, because, whenever the defendants proposed to show how it was to be carried on, they were met with an objection, which was sustained. But defendants did succeed in showing by Pennock that the carrying on of this business in the United States was the subject of discussion.

This note was dated on the 8th of February, 1894. It was taken to Bissell shortly after that time. Bissell, although a defendant and an indorser of the note, was plainly a party whose interests were adverse to those of the maker of the note. The maker of the note claimed that Bissell was, in fact, the owner of it, and that, so far from having procured it to be discounted, he had actually received it from Pennock, and advanced the money upon it himself. Bissell was sworn as a witness by the defendants. Upon his examination there was presented to him a paper known in the case as "Defendants' Exhibit A," which Bissell testified that he gave after he got the money for the note, and that he had reference to that money. This paper was addressed to H. Pennock and one William Van Slooten. It was signed by Bissell; and read as follows: "This is to certify that I have in my possession $15,000; which sum is being held by me for the use and benefit of the New Brunswick Royal Art Union Company." This paper was offered in evidence, and was objected to, as immaterial and incompetent. It is admitted by the testimony of Bissell that this paper had reference to the money which was received upon this note, and, if the paper had been read to the jury, it would have shown clearly that the $15,000 represented by this note, or received for it, was to be used for the benefit of this corporation, which was claimed to be in fact a lottery. For that reason it was not only material, because it was a thing which occurred at the time of the transfer of the note, but it was exceedingly important as tending to establish a very material fact in the defendants' case. The refusal of the court to admit it was therefore error.

It was material for the defendants to prove that this note was given an inception in aid of this lottery. For that reason it was competent to show that the money was advanced by Bissell for that express purpose. In regard to that note Bissell was an adverse witness; and the defendants, although they put him upon the stand, were not concluded by his testimony (Becker v. Koch, 104 N. Y. 394, 10 N. E. 701); but were at liberty, not only to contradict it, but to show by his examination that he was mistaken. Upon that point Bissell was asked whether he got the money for this note from other parties wholly, or whether he furnished some of it himself, to which he replied that he got it from others. He was asked also from whom he obtained the money, which he was not permitted to answer. This ruling of the court was clearly error. The defendants were at liberty to prove by Bissell where that money came from, and they were not concluded by

his testimony that somebody else had furnished it, but they should have been permitted to examine him fully on that point.　He was also asked what he did with the money, but he was not permitted to answer that question.　It needs no argument to show that that was a very important fact to be established in the case by the defendants, and the exclusion of the evidence was error.　That error is not cured by permitting Bissell to answer in the negative the leading question whether he used the money directly or indirectly for the purpose of promoting the New Brunswick Royal Art Union Company.　The answer to that question simply called for his opinion as to the effect of the use of the money.　The defendants were entitled to the facts upon that subject, so that the jury might see precisely what he had done with the money, so as to be able to say whether the use he made of it operated in aid of this art union.

It is unnecessary to consider other errors insisted upon by the defendants.　Enough has been shown to make it appear clearly that the defendants were not permitted to develop their case, and that competent evidence offered by them upon material points was excluded by the court.　For these reasons, the judgment and order should be reversed, and a new trial granted, with costs to the appellants to abide the event.

VAN BRUNT, P. J., and BARRETT and O'BRIEN, JJ., concur. PATTERSON, J., concurs in result.