volumes. The "Animal Kingdom" was, as we understand, a single work, although customarily bound up in two volumes, but which had been, and might again be, bound up in a single volume. We think that what the plaintiffs agreed to pay was 20 cents for each complete copy of the work. Under the arrangement between the plaintiffs and the defendant, the former was obliged to pay the stipulated sum before they had an opportunity to examine the sheet stock. As soon as they discovered the discrepancy between what they paid for and what they received they made a demand for the refund of the amount paid in excess of the agreement. This they are entitled to recover.

Judgment reversed, and new trial granted, with costs to appellants. to abide the event.

Judgment reversed, and new trial granted, with costs to abide event. All concur.

━━━━━

(68 App. Div. 390.)

PRONK v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department. January 30, 1902.)

1. PERSONAL INJURY—INSTRUCTION.
    Instruction that plaintiff may recover if "hurt" is sufficient to authorize recovery for mental pain as well as physical pain.

2. WITNESSES—FAILURE TO CALL—INFERENCE.
    Where plaintiff claims an injury to her nervous system, and defendant has shown by plaintiff that before the accident she visited certain physicians, and has introduced testimony of a person who accompanied her as to her demeanor, and statements made by the physicians, warranting an inference that long before the accident she was suffering from similar nervous impairment, and a finding that she was not physically normal, defendant's omission to call the physicians as witnesses, on the chance of plaintiff waiving her privilege as to their testifying, does not authorize an instruction that such omission requires an inference against defendant.

Appeal from trial term, Kings county.

Action by Elizabeth Pronk against the Brooklyn Heights Railroad Company. From judgment for defendant and from order denying motion to set aside the verdict and for new trial, plaintiff appeals. Affirmed.

Argued before GOODRICH, P, J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

J. Aspinwall Hodge, Jr., for appellant.
Henry Yonge, for respondent.

JENKS, J. In view of the admissions of the defendant, practically the sole issue submitted to the jury by the learned court (Gaynor, J.) was whether the plaintiff suffered any injury from the accident. The jury found for the defendant. The plaintiff insists that the verdict should not stand, and that the learned court was not correct in its statement of the law. It is not suggested that the jury were improperly influenced by any extraneous circumstances, but the proposition is that the verdict was erroneous because the evidence did not warrant it. The plaintiff contended that she was thrown

from her seat when the defendant's car ran off its track onto a blind switch. The injuries alleged were confined to her nervous system, which was said to be seriously and permanently affected. The plain-tiff's attending physician testified that he found her suffering from shock on the day after the accident, and several witnesses corrob-orated the plaintiff as to the impairment of her nervous system. On the other hand, it appeared that at the time of the accident, the plaintiff did not tell of any injury to the police, or to the physician who was sent to the scene, or to any other person present. She was neither bruised nor maimed. She boarded the next car, and went on her way. Further, there was evidence from which the jury might have inferred that the impairment of the nervous system was entirely due to causes antecedent to the accident, and not affected by it. And there was also evidence which might have been con-sidered as affecting the credibility of the witness. I think that the verdict must stand.

The learned counsel for the appellant insists that the refusal of the court to charge that the jury must find for the plaintiff was er-ror. The counsel states in his points that "the court's refusal is couched in the following language: 'No; not unless she was hurt,' " —and then the counsel says, referring to his brief, "But we have already demonstrated that she was hurt." If the jury credited the evidence of the plaintiff, it was established that her nervous system was impaired or abnormal; but that fact, of course, casts no lia-bility on the defendant, unless the jury were also satisfied from the evidence that her condition was due to the accident. But it is said that in any event she was entitled to nominal damages, because she was frightened, dazed, thrown from her seat, was obliged to take another car, to pay another fare, and was detained on her journey. Even assuming that the reasoning and the principle of Mitchell v. Railway Co., 151 N. Y. 107, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604, and Lehman v. Railroad Co., 47 Hun, 355, do not fully decide the question presented in a case of passenger and car-rier (and we do not express any opinion on that point), there is no merit in the contention; for the learned court had charged the jury in effect that, if the plaintiff was "hurt," she could recover, and the word "hurt" embraces mental pain as well as physical pain. Cent. Dict. And, further, the evidence on this subject is con-fined to the testimony of the plaintiff as to her feelings at the time. Such testimony the jury were entirely free to reject. More-over, the plaintiff testified: "I didn't feel sick at the time. * * * All I know is that I was thrown out. I didn't know anything else. * * * When I say that I was not injured before the car hit the gutter, I mean that I didn't feel hurt. I didn't feel hurt until I got down and saw my father, and then I felt very bad." There is tes-timony from which the jury might have inferred that only Mrs. Dil-lon (another passenger) was thrown from the car. Even if the proof that another fare was collected was competent under the plead-ings,—which I seriously doubt,—it was not offered. The purpose of her journey was to make a visit to her father at his place of busi-ness. "De minimis non curat lex."

It is also contended that the learned court erred in its disposition of the request to charge "that after the plaintiff had rested the defendant could have called Drs. Levy and Metcalfe, and asked them concerning the lady's consultations and their examinations of Mrs. Pronk, and their evidence could not have·been excluded by any objection of the plaintiff that they were privileged communications." The court replied: "There was no obligation on the part of the company or anybody else to call these doctors that she was treated by in the past, and no inference can be drawn against the defendant's side for not calling them. The company was under no legal obligation whatever to call any of these doctors." The plaintiff then excepted to the refusal to charge and to the modification. The learned court then said: "The other is a mere moot question. It has nothing to do with it. The law is that, if a doctor be called, he is not permitted to testify with regard to the patient. If you employ a doctor, and he is called here by the other side, he is not permitted to testify, unless you waive the privilege, and permit him to testify." Plaintiff excepted. The court then said: "But I do not say that that has anything to do with the case whatever. In fact, it has nothing to do with the case." Plaintiff excepted. The learned counsel for the appellant first argues that the defendant relied upon proof of the visits of plaintiff to these physicians as bearing upon credibility; and, second, to show that her ailments were due to a cause both antecedent to and foreign to the accident, and the burden of his criticism is that the evidence introduced of the latter fact was meager and unsatisfactory, and that it might have been made "more satisfactory" if the physicians had been called. Such anxiety is altruistic. "More satisfactory" to whom? The defendant was not bound to satisfy the plaintiff by its conduct of its case, by the cogency of its evidence, or by the character of its proof. That is a matter between the defendant, the court, and the jury. His peril is from them, not from the plaintiff.· And he has passed that peril, and has satisfied both court and jury. But the learned counsel insists that "the well-known rule of law should have been stated to the jury that where it is apparent that there are certain witnesses who could testify to material facts, and they are not called by the plaintiff, who claims that the facts exist, and their absence is unexplained, and no adequate excuse is made for the failure to produce them or their evidence, then the jury may consider the question, and may even entertain a presumption which is more or less conclusive that, if they were called, their evidence would be adverse to the party failing to call them." I think that the court committed no error in its disposition of the request touching these physicians. It is to be kept in mind that they were consulted by the plaintiff years before the accident, and that they were not called by plaintiff or by defendant. The defendant had elicited the fact from the plaintiff on her cross-examination that she had visited these physicians. It had called Mrs. Lyons, who went with the plaintiff to these physicians, and her testimony, both as to the demeanor of the plaintiff and the statement made by one of the physicians, warranted the jury to infer that the plaintiff, long before the accident, was suffering from some nervous impairment similar

in manifestations to that to which she testified on the trial, and to find that she was not a fully-developed woman. Of course, there was no obligation upon the defendant to prove any further facts or any additional circumstances. This being so, if, as the plaintiff contends, the court erred, it follows that it erred in not charging that it was incumbent on the defendant to call these doctors to prove facts which it had already put in evidence. But as to such facts the testimony of the physicians would have been but cumulative, for their testimony as to how the plaintiff demeaned herself, and Dr. Metcalfe's testimony that he had said that the plaintiff was not physically normal, was no better testimony than that of the witness Mrs. Lyons. It certainly is not incumbent upon a party to call a merely cumulative witness at the peril of having the jury told that the mere omission leads to an inference that the uncalled witness would not corroborate. In Bleecker v. Johnston, 69 N. Y. 309, Allen, J., reversing the judgment below, concisely states the proposition involved in this case thus:

"It was not left to the jury to say whether, under the circumstances, the absence of the defendant was suspicious, so as to authorize an unfavorable inference, but they were told that it was the duty of the defendants to call him, and that, the defendants being bound to produce him, his nonproduction not merely justified a favorable consideration of the evidence for the plaintiff, but that they might infer that his testimony would be adverse to the defendants, thus permitting the jury to give the plaintiff the benefit of the evidence of the unsworn witness, as if he had given evidence in his favor."

In Sugarman v. Brengel (Sup.) 74 N. Y. Supp. 167, I have lately discussed all of the cases cited by the learned counsel for the appellant upon this point, and it is needless to reiterate. Bleecker v. Johnston, supra, contains a full and cogent discussion of the principles. Assume that these physicians were within reach of the defendant's subpœnas. Their testimony was incompetent under section 834 of the Code of Civil Procedure. The defendant had no reason to anticipate that the plaintiff would lift the bar that shut them out of the witness box. Must it be said, then, that it was the obligation of the defendant to subpœna strange witnesses, incompetent to testify, who might give testimony merely cumulative, provided the plaintiff waived her privilege? And if it had not called such cumulative witnesses on the chance that the waiver might be made, should the court charge that such omission required an inference against the defendant? I think not.

There is a further consideration. The defendant sought to establish certain facts connected with visits paid by the plaintiff to her physicians long prior to the accident. For this purpose it produced evidence which, if credited, established such facts. If it had proceeded to call such physicians, it was thereby precluded from calling any witness to impeach their character, or from offering any proof of prior contradictory statements, or from offering any proof to contradict such witnesses by another, when the only effect would be to impeach, and not to give any evidence material to the issue. Becker v. Koch, 104 N. Y. 394, 10 N. E. 701, 58 Am. Rep. 515. Hence the practical result of the plaintiff's proposition that the learned trial justice erred in his statement that "no inference can be drawn against

the defendant's side for not calling them" is, in effect, either that the defendant, after having established the facts in its own way at its own peril as to the sufficiency thereof, must thus bind itself by calling such physicians, or must suffer a charge against it that from such mere omission under the circumstances "an inference can be drawn."

The court correctly charged the statute of privilege. But the criticism is the court added that it "had nothing to do with the case." The physicians had not been called by either party, and so the criticism of the learned counsel was not based upon any incident in the case, or upon any question arising in the trial thereof, and the grievance is that the court refused to charge what ruling it would have made upon a question of the admissibility of testimony, provided that question had been raised in the case by the calling of witnesses who were not called, and whom the defendant was not required to call in the establishment of its case, and that the court remarked that the question thus presented was not involved in the trial.

The judgment and order should be affirmed, with costs. All concur.