## RITCHEY v. PAKAS.

(Supreme Court, Appellate Division, Second Department. March 18, 1910.)

APPEAL AND ERROR (§ 1058*)—REJECTION AND SUBSEQUENT ADMISSION OF EVI-
DENCE.

A witness for plaintiff in an action for commissions, on the theory of
defendant having leased the hotel part of his building to H., who was
introduced by plaintiff to defendant, having testified that, a few days be-
fore he made a contract to purchase the property of defendant, defend-
ant stated, and H. confirmed the statement, that he had leased the hotel
to H. for 15 years, and that with the lease there was to be a purchase of
the furniture by H., and the giving by him of a chattel mortgage thereon
to secure the rent—error in refusing to allow defendant to introduce the
contract between witness and defendant, as to which defendant wished to
cross-examine witness for the purpose of discrediting him, the contract
including the furniture on the premises, and stating that the premises
were to be sold subject to leases of the stores and of certain apartments,
which expired in a few months, but making no mention of the lease to
H., was not cured, and exception to the rejection of the evidence was
not waived by defendant introducing the contract during the argument
on the court's then stating to him, of its own motion, that he might do
so, if he wished to without the right to cross-examine the witness, as it
cannot be said that defendant benefited as much by proof of the instru-
ment, as he could have by proof of and cross-examination on it.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4200–
4206; Dec. Dig. § 1058.*]

Hirschberg, P. J., dissenting.

Appeal from Special Term, Kings County.

Action by Daniel P. Ritchey against Solomon L. Pakas. From a
judgment for plaintiff, and from an order denying a motion for new
trial, defendant appeals. Reversed, and new trial granted.

See, also, 132 App. Div. 937, 116 N. Y. Supp. 1146.

Argued before HIRSCHBERG, P. J., and WOODWARD,
JENKS, BURR, and THOMAS, JJ.

John Frankenheimer, for appellant.
Albert I. Sire (William L. Stone, on the brief), for respondent.

JENKS, J. The plaintiff has recovered a judgment for broker's
commissions on the gross rentals of a lease of a hotel for 15 years
made by the defendant with Mr. Hurley. It does not appear that any
writing by way of agreement or lease was ever executed. The de-
fendant admitted that the plaintiff introduced Mr. Hurley to him as a
proposed lessee, but denied the other allegations of the complaint.
The plaintiff sought to make out his case,. aside from his own testi-
mony, by proof of certain admissions of the defendant to the witness
Mr. Preble, and by the testimony of Mr. Hurley and of Dr. Clarke.
The defendant sought to show that he had put Mr. Hurley in the
hotel as manager with the common view that he ultimately might be-
come lessee, but that Mr. Hurley thereafter declined. There was a
sharp conflict of witnesses, of whom some were confronted with seri-
ous inconsistencies of statement, if not positive self-contradictions
under oath, and their versions are so wide apart as almost to be irre-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

concilable with the idea that each strove to speak the whole truth and nothing but it. Of the witnesses for the plaintiff the plaintiff himself was an interested party. Mr. Hurley, it appeared, had been involved in dispossession proceedings brought against him by the defendant, and Mr. Preble was a co-broker with the plaintiff. The jury might naturally regard Dr. Clarke as of a different status. Dr. Clarke testified that the defendant about June 1, 1908, admitted to him that he had entered into a lease with Mr. Hurley for 15 years, said that he would send Mr. Hurley to Dr. Clarke to corroborate this fact, and that Mr. Hurley came. And he also testified that it was said that with this lease there was to be a purchase of the furniture by Mr. Hurley and the delivery of a chattel mortgage thereon for $7,500 as security for the rent. On cross-examination he further testified that before June 10, 1908, at the law office of James, Schell & Elkus, Mr. Hurley discussed the lease in the presence of Mr. Randall; that the defendant confirmed Mr. Hurley; that this was a few days before the witness' contract to purchase this property was executed; and that he had no doubt but that there was an arrangement made that the defendant was to execute a lease for 15 years to Mr. Hurley before the witness took title. The defendant thereupon offered in evidence the contract between the witness and the defendant for the purchase of the property, and particularly the specific parts that refer to the lease and the furniture. This was excluded under the objection, incompetent, irrelevant, and not within the issues, and that no reference was made to the lease in question, and the defendant excepted. The learned counsel for the defendant then remarked: "I wish to put on the record that I desire to call attention to specific portions of this paper." The court then replied, "Ask questions." The counsel then asked, "I call your attention to this provision in this paper marked 'Exhibit C' for identification, 'Said premises to be sold'"—but was cut off by an objection, whereupon the court said: "The whole contract has been marked for identification and is part of the record." Later an inquiry was made whether the witness had not initialed certain leases on the property, but this was excluded on the objection that there was no contract in evidence, and on general grounds, to which exception was taken. The defendant during the delivery of his evidence again offered this contract in evidence to call attention to "certain portions which we claim affect the credibility of Dr. Clarke." That was objected to, and the court remarked, "It does not say anything about a fifteen years' lease to this man," and the learned counsel for the defendant replied: "That is our contention, that it doesn't contain it." Examination of this rejected contract shows that it includes all of the furniture on the premises belonging to the defendant, which is represented to be sufficient to furnish about 10 apartments, and that the said premises are to be conveyed subject to certain specified incumbrances, among them certain mortgages.

The contract also contains these provisions:

"Said premises to be sold by the party of the first part, subject to leases of the stores, which have been exhibited and initialed by the parties; and to leases of the apartments, none of which extend beyond October 1st, 1908.

* * * Each of the parties to these presents hereby agrees to convey the property above described, as sold by that party, free from all incumbrances, except as above specified, and to execute, acknowledge and deliver, or cause to be executed, acknowledged and delivered to the other party, or to the assigns of the other party (the deed to be drawn in each case at the cost of the vendor), a proper warranty deed containing full covenants, duly executed and acknowledged, to convey and assure to the grantees an absolute fee of said premises."

The importance of this written evidence as bearing upon the testimony of the witness is almost obvious. The witness said that there was to be a 15-year lease made and executed between these parties before he took title that involved the purchase of the furniture, and yet he agreed to purchase the premises by contract which made no mention of any such lease, and which covered the furniture or a large part of it, and yet which expressly named certain other leases. But this contract finally was admitted upon the offer of the defendant, and therefore the learned counsel for the respondent contends the exception is not available to the appellant. It is true that the general rule is that the error in the rejection of evidence is cured by the subsequent offer of the evidence by the same party and its admission. Neil v. Thorn, 88 N. Y. 270. But the reason for the rule rests in the fact that the order of proof rests in the discretion of the court, and the party by the reception of the evidence receives the full benefit thereof. Id. It appears that the learned court offered to change its ruling at a time when the counsel for the defendant was summing up. The counsel then said that, when he offered the paper, he desired to cross-examine the witness with reference to it. The court replied that it was "not possible to modify the record, so far as any cross-examination, which you say you desired to make of Dr. Clarke, based on the paper itself. I say now I will admit that paper in evidence for any purpose with reference to the issues in the case, if you desire to have it in the record." Plaintiff's counsel then stated that Dr. Clarke was in court. But the court said:

"You cannot be placed in the same position you were before, if you desire to examine Dr. Clarke, but, so far as the paper is concerned, it was excluded on the objection of counsel, and now I will let the paper in."

The defendant's counsel said:

"I don't think the paper would have its full effect, unless I could cross-examine Dr. Clarke."

The Court:

"If you do not want to accept that—"

Defendant's counsel then said:

"Very well, I will put it in."

It is to be noted, first, that the defendant did not initiate the offer of the contract in evidence at this time; and, second, that he called attention to the fact that its admission at that time would not accomplish the purpose, namely, that of cross-examination; and, third, that the court in effect refused to permit the use of the paper in cross-examination, although it might in its discretion have done so, for the witness was still in court, and, further, that the offer was made under

limitations prescribed by the court that prevented the use of the evidence for the primary purpose for which it was originally offered, namely, cross-examination. The counsel was in a dilemma. If he did not offer the contract at all, it might well have prejudiced him in the eyes of the jury, and, if he did offer it at the suggestion of the court, he was barred from the full use thereof. The headnote in Neil v. Thorn, supra, is as follows: .

"When evidence is erroneously rejected, the error is cured by the subsequent offer by the same party of the same evidence and the admission thereof, in case it appears that the error was so corrected under circumstances which worked no injury to the party."

As I have said, the theory of waiver of an exception rests upon the principle that the party has received the full benefit by the subsequent admission of the evidence at his instance. Such is the reason given in the authorities cited in support of the rule laid down in Neil v. Thorn, supra. After the contract was in evidence, the counsel could, of course, comment upon it as a contradiction of Dr. Clarke, but his testimony remained unchanged. If Dr. Clarke had been confronted with the contract in the course of cross-examination, can it be assumed that his testimony would have remained unchanged? He did not testify to acts but to conversations, representations, or admissions, as to which the mind of man is fallible indeed. Might not this written evidence of his acts have caused him to qualify or modify his evidence or have refreshed and have corrected his memory of what had been said by others? Might he not have been convinced that he was testifying to his inferences rather than to others' utterances, or that he had assumed that the parties were in accord, when, in fact, they were in discussion? On the other hand, if the witness had still maintained the correctness and the certainty of his testimony, he would have been confronted by his contract whose terms appeared inconsistent with obligations of the parties which trenched upon his rights. His demeanor and bearing under such circumstances, or his attempt at explanation or reconciliation, or possibly his self-entanglement, might have stamped his testimony as unreliable or as unworthy of credence. Cross-examination is not confined to the baring of falsity. It may test the memory; it may elicit the whole truth; it may resolve impression from recollection, or inference from reproduction; it may suggest facts that lead to correction or recantation; it may demonstrate that a statement made was wrong; it may convince the judges that the witness was imaginative, biased, forgetful, eager, or unreliable mentally or morally. See Moore on Facts, § 1274. Gray, J., speaking for the Court of Appeals (People v. Giblin, 115 N. Y. 196, 21 N. E. 1062, 4 L. R. A. 757), says:

"It is an office of cross-examination to exhibit the improbabilities of the witness' story."

Starkie, whom a great judge (Peckham, J., in Becker v. Koch, 104 N. Y. 394, 10 N. E. 701, 58 Am. Rep. 515) has pronounced "one of the ablest and most philosophical of English writers" on Evidence, says:

"By this means the situation of the witness with respect to the parties and the subject of litigation, his interest, his motives, his inclination and preju-

dices, his means of obtaining a correct and certain knowledge of the facts to which he bears testimony, the manner in which he had used those means, his powers of discerning facts in the first instance, and his capacity for retaining and describing them, are fully investigated, and ascertained, and submitted to the consideration of the jury, who have an opportunity of observing the manner and demeanor of the witness; circumstances which are often of as high importance as the answers themselves." Starkie on Evidence (10th Ed.) p. 195.

Prof. Wigmore in his work on Evidence (section 1367) writes:

"Cross-Examination as a Distinctive and Vital Feature of our Law. For two centuries past the policy of the Anglo-American system of evidence has been to regard the necessity of testing by cross-examination as a vital feature of the law. The belief that no safeguard for testing the value of human statements is comparable to that furnished by cross-examination, and the conviction that no statement (unless by special exception) should be used as testimony until it has been probed and sublimated by that test, has found increasing strength in lengthening experience. * * * Nevertheless, it is beyond any doubt the greatest legal engine ever invented for the discovery of truth. * * * If we omit political considerations of broader range, cross-examination, not trial by jury, is the great and permanent contribution of the Anglo-American system of law to improved methods of trial procedure. Striking illustrations of its power to expose inaccuracies and falsehoods are plentiful in our records; and it is apparent enough in some of the great failures of justice in Continental trials that they could not have occurred under the practice of effective cross-examination."

The writer then cites many instances. Unless we can be assured that the defendant benefited as much by the proof of the contract as he could have benefited by proof and cross-examination upon it, I think that his exception remained well taken.

I also think that the court erred in limitation of the inquiry as to the alleged contract of brokerage between the defendant, Dr. Clarke, and the brokers who acted in the proposed purchase of the premises by Dr. Clarke. So far as the record shows, such contract might not have been admissible as evidence against Dr. Clarke, but inquiry based upon it was entirely legitimate beyond the range permitted by the learned court.

The judgment must be reversed and a new trial must be granted, costs to abide the event. All concur, except HIRSCHBERG, P. J., who dissents.