35 N.Y.2d 283 (1974)
Robert Spampinato, an Infant, by His Father and Natural Guardian, Thomas O. Spampinato, et al., Appellants,
v.
A. B. C. Consolidated Corp. et al., Respondents.
Court of Appeals of the State of New York.
Argued September 10, 1974.
Decided October 8, 1974.
Thomas R. Newman, Bernard Kalmanson and Benjamin H. Siff for appellants.
Sherman C. Bernhard and Dominic J. Cornella for respondents.
Chief Judge BREITEL and Judges GABRIELLI, JONES, STEVENS and WITMER[*] concur with Judge WACHTLER; Chief Judge BREITEL concurs in a separate opinion in which Judges GABRIELLI, JONES, STEVENS and WITMER[*] also concur; Judge RABIN taking no part.
*285 WACHTLER, J.
On August 8, 1969, the plaintiff, an 18-year-old high school student was riding his bicycle on Flatbush Avenue in the vicinity of Erasmus High School in Brooklyn. As he passed the school, a truck driven by the defendant Harold Stark and owned by the defendant A. B. C. Consolidated Corp., approached from behind, struck him and ran over his legs. At the trial the plaintiff read the driver's deposition in evidence and later called him to the stand. This evidence tended to establish the plaintiff's theory that the accident was caused by the driver's inattention. But it also supported the defendants' position that the boy had suddenly come into the path of the truck causing, or at least contributing to, the accident.
From this and the other trial proof the jury was presented with a close question as to the exact cause of the accident. In marshaling the evidence the court noted the conflicting versions and also drew attention to the fact that the plaintiff had "read in evidence the complete examination before trial of Harold J. Stark". The court then charged the jury as follows: "Now, he is an adverse party to the plaintiff in this case obviously because he is one of the two defendants being sued. However, by having chosen to read into evidence his deposition, the plaintiff did so in order to introduce the defendant's version of the occurrence as part of the plaintiff's case thereby making him the plaintiff's own witness. * * * By taking the deposition itself, the examining party does not make his adversary his witness. The attorney for the plaintiff has the right to use *286 only such portions of that examination before trial as he deems will favor his own client. However, in this case Mr. Kalmanson [plaintiffs' counsel] made the defendant's version of the happening of the accident part of his case in order to prove his case and part of his evidence in chief as to the manner of the occurrence. In so doing, the plaintiff introduced Stark's evidence on his own behalf, that the truck was a 1969 panel truck." At this point the court itemized the facts contained in the driver's deposition. The plaintiff's objection to this portion of the charge was overruled and the jury returned a verdict for the defendants.
On appeal the plaintiff claimed that the court upset the delicate balance of the proof by erroneously charging the jury that the plaintiff had adopted, in its entirety, the driver's version of the accident because he chose to read the deposition in evidence. The Appellate Division affirmed without opinion, although two Justices (HOPKINS, J. joined by MARTUSCELLO, J.) dissented.
The charge in fact was erroneous in two respects (1) in holding that the plaintiff had made the witness his own by reading the deposition and (2) in stating, in effect, that the consequence of this was to bind the plaintiff to the witness's version of the facts.
Although CPLR 3117 recognizes that a party may under certain circumstances "make a person his own witness" by using the witness's pretrial deposition, the circumstances are few and narrowly defined (CPLR 3117, subd. [d]). He does not, of course, do so by merely taking a deposition, or even by using the deposition at trial for impeachment purposes alone. He only runs the risk of adopting the witness when he uses the deposition as evidence in chief, or, to use the words of the statute, "for any purpose other than that of contradicting or impeaching the deponent" (CPLR 3117, subd. [d]). However, and here the statute is quite explicit, "this shall not apply to the use of a deposition as described in paragraph two of subdivision (a)" which includes "the deposition of a party or any one who at the time of taking the deposition was an officer, director, member, or managing or authorized agent of a party, or the deposition of an employee of a party produced by that party" (CPLR 3117, subd. [a], par. 2). Since Stark was a *287 party to the action, the plaintiff was entitled to use his deposition as evidence in chief (CPLR 3117, subd. [a], par. 2) and the court erred in holding that by doing so he made the witness his own (CPLR 3117, subd. [d]).
It appears that the Appellate Division majority acknowledged this error but found that it "was dispelled when plaintiff called that defendant to the stand and questioned him" (Spampinato v. A. B. C. Cons. Corp., 43 A D 2d 566, HOPKINS, J., dissenting). On this point we would briefly note that while it is true that by calling the driver to testify the plaintiff made him his own witness, it does not follow from this  as the court in effect charged here  that the plaintiff adopted, or became bound by, the witness's version of the facts. No party is ever limited by the witnesses he produces, or examines, from establishing the facts in issue. A party may not generally impeach, that is, attack the general or specific credibility of his own witness, but impeachment is not to be confused with "binding" testimony (Becker v. Koch, 104 N.Y. 394; see, generally, Richardson, Evidence [10th ed.], § 508).
The order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge BREITEL (concurring).
I agree with the majority opinion.
I would add that the narrow issue in this appeal is the error in qualifying plaintiff's trial use of the deposition before trial of defendant driver. As pointed out in dissent at the Appellate Division the applicable statute is clear and dispositive. CPLR 3117 (subd. [a], par. 2) permits the unqualified use of the adverse party's deposition for any purpose. That is the end of it; and it was grave error for the trial court to charge that by using the driver's deposition beyond what defense counsel read, plaintiff made the adverse party his own witness and was bound by the driver's deposition.
The discussion in the opinion at the Appellate Division confuses distinct and some very well-settled doctrine, none of it necessary to the resolution of the case.
Basic principles are as follows: no party is ever limited by the witnesses he produces or examines from establishing the facts in issue. Thus, no party is "bound" by what any witness *288 says, although the party may be "bound" by what he himself testifies to on the merits of the case. A second principle is that an examining party will be "bound" by the testimony of a witness he calls as to collateral matters or by examination into collateral matters of a witness called by another party. Even here, if the witness is evidently hostile, or is an adverse party, this limitation does not or may not apply. The third rule relates to "impeachment of a witness" which defines the permissible area to show lack of general or specific credibility in a witness or party. Impeachment is not to be confused with "binding" testimony.
A party may not, generally, impeach, that is, attack the general or specific credibility of his own witness, nor that of the other party's witness if the examination of the other party's witness has gone beyond the other party's proof through that witness. Like the "binding" rule, the restriction on impeachment usually applies, but not invariably, to an adverse party or to an evidently hostile witness (Richardson, Evidence [10th ed., Prince], § 512).
The distinctions last discussed are adequately treated in Richardson on Evidence (§ 508 et seq.; see, also, 3A Wigmore, Evidence [Chadbourn rev.], § 896 et seq.). They rest on largely well-settled principles. Whatever fudginess exists relates to hostile witnesses, in which the trial court has great discretion in allowing or curtailing "impeachment", if only to control trial time diverted to collateral matters and to prevent abusive tactics. The same limitations do not apply to the adverse party, as to whom, although he is a hostile witness, that stance is merged into his status as an adverse party. Since much or all of impeachment comes into the case on cross-examination, it is always subject to the trial court's general discretion to control the scope and length of cross-examination in order to conserve trial time and prevent abusive tactics.
None of these problems, it is suggested, are relevant to the narrow problem in this case, which as noted earlier is resolved by an explicit statutory provision. Interestingly, the law, in this respect, was the same before CPLR (see Civ. Prac. Act, §§ 303, 343-a).
*289 Accordingly, I concur in directing a reversal of the order of the Appellate Division, and the granting to plaintiff of a new trial.
Order reversed, with costs, and a new trial granted.
NOTES
[*] Designated pursuant to section 2 of article VI of the State Constitution.