TARSNEY v. TURNER.

(*Circuit Court, E. D. Michigan.* October 11, 1880.)

1. FRAUDULENT CONVEYANCES—CONSIDERATION—HUSBAND AND WIFE.
    When, by direction of a wife, the rents of her separate estate are paid to her husband with the understanding that he will invest them for her benefit, this creates a debt sufficient to constitute a valid consideration for a subsequent deed from him to her, as against the claims of other creditors.

2. SAME—READING DEPOSITIONS—ARGUMENT—ATTACKING CREDIBILITY OF WITNESS.
    When a party who assails a conveyance from husband to wife, as made in fraud of creditors, calls the husband and wife as witnesses, and afterwards reads their depositions in court, he thereby vouches for their credibility, and cannot be heard, in argument, to question their veracity.

In Bankruptcy.    Bill to set aside fraudulent conveyances.
*Wisner & Draper,* for complainant.
*Camp & Brooks* and *Griffin & Dickinson,* for defendant.

BAXTER, J. In 1873, Henry Turner and wife took up their residence in East Saginaw. They were apparently in easy circumstances. He soon thereafter acquired title to property, real and personal, worth $50,000; but by several instruments bearing date from the 13th of March to the 13th of December, 1877, inclusive, he conveyed the same to defendant, his wife, reciting an aggregate consideration of $58,365. On the 31st of August, 1878,—eight months and a half after the execution of the last of said conveyances,—he filed a petition in the district court

for this district, praying to be allowed the benefit of the bankrupt law, and was accordingly in due time adjudged a bankrupt, and complainant was appointed assignee of his estate. His liabilities as proven amount to $1,700, and his assets to $191.50. The assets being insufficient to pay the debts, complainant filed this bill for the purpose of having said conveyances annulled, on the ground that they were executed without consideration, and with the intent to hinder, delay, and defraud creditors. The defendant has answered, explicitly denying the alleged fraud, and affirming that said conveyances were executed in good faith, and for the considerations therein recited. The issue is therefore one of fact.

There is no positive evidence of an actual fraudulent intent in the execution of these conveyances, or either of them; but it is insisted that there are badges from which the fraudulent intent ought to be inferred. A badge of fraud is any fact calculated to throw suspicion upon the particular transaction. But badges of fraud are not conclusive; they may be explained. Has such explanation been made in this case? In this regard no proof has been offered except the evidence of the defendant and her husband. They were called and examined by the complainant. Their examination consumed four days. They were asked a great many questions, pertinent and impertinent, collateral and frivolous, but their answers, if true, clearly disprove complainant's case. They say the defendant owned a separate property in China which yielded an annual rent of $5,000, which, by her direction, was paid to her husband; that he used this fund so paid to him to pay for the property (or a portion of it) in controversy, and took the title in his own name; that in this way he became her debtor, and that he honestly and in good faith made the conveyances assailed by this proceeding in liquidation of his said indebtedness. The complainant, however, after thus taking and reading the depositions of these witnesses, contends that they contain discrepancies and contradictions which cannot be reconciled, from which he deduces the conclusion that their testimony is false. Is he at liberty to thus assail the integrity and truthfulness of his own witnesses? He not only took, but read, their depositions on the trial of the case, and thereby vouched for their credibility. But he was not absolutely concluded by their evidence. The courts recognize the possibility of surprises in such matters. One may without fault examine an unworthy and unreliable witness, and afterwards discover that he has been duped and imposed on. He is, therefore, not concluded by what the witness may say. He may show by other evidence, if he can, that the facts are otherwise than deposed to by such witness, or, as in this case, where the evidence is in depositions, decline to read them on the hearing. But he will not be permitted to impeach the reputation for truth, or impugn the credibility of his own witness. (Greenl. Ev. pp. 442, 443; and 2 Phil. Ev. (4th Amer. Ed.) pp. 982, 983. Nor will he be permitted, by argument based on the assumption that the witness is interested against him, and is dishonest, to destroy the effect which the law requires the court to give to evidence (as against the party offering it) voluntarily adduced by a party to a cause. If complainant believed the depositions of these witnesses,

as he·now contends, to be untrue, he ought not to have read them. If false, why offer them in evidence? What purpose could they subserve to be first read and then argued away as being untrue? The absurdity of such a practice is obvious. To tolerate it would but be a waste of time. Having introduced the depositions, complainant is bound thereby, unless there is other proof in .the record showing the fact to be otherwise. There is no such proof, and it ,ollows that complainant is not entitled·to a decree on the ground that the conveyances mentioned were made to hinder and defraud creditors.

. But complainant urges another ground of relief. He insists that, conceding the testimony of these witnesses to be true, he is entitled to a decree. They both admit that the rents realized from defendant's separate property, which constitutes the consideration for the conveyances attacked, were paid to the husband by the wife's direction and request; and thereupon it is contended that "when a married woman, living with her husband, consents to and permits her husband to receive the income of her separate estate," the estate thus received "becomes absolutely his, and that he is not answerable to her for it," and that the receipt of such income "is not a sufficient consideration to support a conveyance from the husband to the wife," as against his creditors, unless there is an agreement by him "to repay or invest the same for her." We concur in the proposition as stated; but we think the evidence (if the testimony of the witnesses mentioned is to be received as true) brings this case within the exception. The rents realized from defendant's property were by her direction paid to her husband, but it was so paid upon an "understanding" that he would invest the same for her benefit. This understanding was repeatedly recognized by him. He thus became her debtor, morally and legally. His obligation to account was enforceable in a court of conscience, and the conveyances made in discharge thereof are supported by a valid consideration. Complainant's bill will be dismissed, with costs.