## McLEAN *v.* CLARK and others.

*(Circuit Court, E. D. Michigan. June 27, 1887.)*

1. UNITED STATES CIRCUIT COURT — JURISDICTION — CITIZENSHIP — COLLUSIVE CONVEYANCE.

C., a judgment creditor, and also the purchaser of land under an execution sale, conveyed the same to M., his son-in-law, a non-resident, for an interest in a worthless patent. Subsequent to his agreement to convey he endeavored to obtain possession of the land by proceedings in which he swore that he was the owner, and entitled to possession. The grantee never saw the land, never examined the title, or inquired as to its value, and took no part in the suit brought in his name to set aside a fraudulent deed made by the judgment debtor. *Held*, that the conveyance was collusive, and the court had no jurisdiction.

2. WITNESS—ADVERSE PARTY.

Where a party is called as a witness by the opposite party. the latter is not bound by his general statement as to his motives or intention in a particular transaction, but may draw any inference from his testimony which the facts stated by the witness seem to justify.

3. CLOUD ON TITLE—BILL TO REMOVE.

*Quære* whether a bill will lie by the purchaser at an execution sale to remove a cloud from the title.

(*Syllabus by the Court.*)

In Equity.

This was a bill in equity by the assignee of a purchaser at an execution sale to procure the annulment of a deed made by John Clark, defendant in the execution, to the defendant Townsend, prior to the sheriff's sale. The facts of the case are substantially as follows: On June 9, 1882, one David R. Shaw recovered a judgment in the Wayne circuit court against John Clark, John T. Clark, and Uriel Clark, for $4,653.33, upon a promissory note made October 29, 1879, and payable 90 days after date. At the time this note was made, and until after it had matured, John Clark was the owner of certain valuable real estate in the county of Lapeer, which, on February 7, 1881, he conveyed to the defendant Townsend for the nominal consideration of $50,002.94. Late in June, 1882, an execution was issued upon this judgment, and levied upon these lands, and at the execution sale, September 8th, they were bid in by the plaintiff Shaw for the amount of his judgment. In December, 1883, the sheriff executed a deed of the lands to Shaw, in pursuance of the statute, and on May 22, 1884, Shaw conveyed the lands to plaintiff, a citizen of Ohio, who filed this bill June 14, 1884; alleging that the conveyance from Clark to Townsend was fraudulent and void, and was made for the purpose of hindering and delaying the creditors of Clark in the collection of their claims. The case was submitted upon bill, answers, and proofs.

*A. C. Angell* and *Otto Kirchner*, for plaintiff.

*Geer & Williams*, for defendants.

BROWN, J. A preliminary objection is taken to the jurisdiction of this court, which we think is fatal. By section 5 of act of March 3, 1875:

"If, in any suit commenced in a circuit court, * * * it shall appear * * * that such suit does not really and substantially involve a dispute or controversy properly within the jurisdiction of said circuit court, or that the parties to said suit have been improperly or collusively made or joined, either as plaintiffs or defendants, for the purpose of creating a case cognizable or removable under this act, the said circuit court shall proceed no further therein, but shall dismiss the suit."

It is insisted by defendants that the deed from Shaw to plaintiff was colorable only, and was not made *bona fide*, but for the sole purpose of conferring jurisdiction upon this court. Let us examine the facts, and see how far this contention is supported by the proofs. In December, 1883, Shaw became the purchaser of these lands at execution sale for

$4,863.70. The lands were estimated to be worth $50,000, and were incumbered to the amount of about $25,000, besides the conveyance to Townsend which this bill seeks to annul. To substantiate the claim of collusion, defendants rely solely upon the testimony of plaintiff McLean, who was called by them as a witness, and who swore, in substance, that he was an attorney of some ten years' standing, residing in Elyria, Ohio, and was the son-in-law of David R. Shaw. Before beginning the practice of his profession he taught school in Pontiac, in this state, for two years. From conversations with Shaw he knew of his suit against Clark, and of his levy upon and sale of the lands in question. He says that at about Christmas, 1883, while spending the holidays with his father-in-law in Detroit, he had two or three conversations with him about taking a deed of these lands in exchange for 100 shares of the stock of a certain corporation which had been formed in Ohio, to manufacture a patented combination of a burglar and fire alarm upon a telephone, and that in the May subsequent the deed was sent to him. He never saw the lands, and had no knowledge of them, except as they had been described to him by Shaw, who told him that there were 1,100 acres, well improved, and with a number of buildings upon it. He did not know in what township the buildings were situated; knew nothing of the state of the title, or the prospects of success in the litigation; and was informed by Shaw that the lands were mortgaged to the extent of $25,000. Some correspondence passed between them after he left Detroit, but the letters were not produced. The deed was sent to him in May, and forwarded by him to the register of deeds at Lapeer. He was here in June or July, and consulted an attorney with regard to bringing a suit; but the bill is neither signed nor sworn to by him. The only consideration for the transfer was the one-half of plaintiff's one-third interest in the patent above mentioned, which turned out to be worthless. No value was fixed upon the patent, nor upon Shaw's interest in the land; but, the patent having been made over to the corporation, plaintiff had agreed to convey to Shaw 100 shares of the stock, the par value being $50 a share. The corporation possessed no property besides the patent, and no certificates of stock were ever issued, though plaintiff says a memorandum of the transaction was made on the books of the corporation. Notwithstanding the bargain for this exchange of speculative properties was consummated in January, and nothing remained but the delivery of the deed, in the following March Shaw filed a sworn complaint against Clark, with a circuit court commissioner in Lapeer county, for the purpose of getting possession of these lands, in which he stated that the lands were his, and he was entitled to the possession of the same. This suit was dismissed by the commissioner April 24th. McLean has taken no part in looking up the testimony in this case; but Shaw, without being requested by him, has been actively engaged in that pursuit.

Upon this state of facts we think it clear that the transfer in question was purely colorable. The case is not unlike those of *Hayden* v. *Manning*, 106 U. S. 586, 1 Sup. Ct. Rep. 617, and *Little* v. *Giles*, 7 Sup. Ct. Rep. 36. It had been decided by the supreme court of this state in *Cranson*

v. *Smith*, 47 Mich. 189, 10 N. W. Rep. 194, that a bill of this kind would not lie after a sale upon execution, but an opposite view had been taken by this court in the case of *Orendorf* v. *Budlong*, 12 Fed. Rep. 24. This furnished a strong motive for such a transfer of Shaw's interest as would give this court jurisdiction. It was hopeless to expect to succeed in the state court except by an action in ejectment. There was at least a possibility of success here. The circumstances attending the transfer; the total want of knowledge on the part of the plaintiff of the value, situation, and state of the title of the land in question, and of the probabilities of success in the suit which he must institute to obtain possession; the utter ignorance upon Shaw's part of the patent, and all which pertained to it; the indifference of McLean, and the activity of Shaw in prosecuting this suit; and Shaw's attempt to obtain possession of the lands subsequent to his bargain with the plaintiff, —satisfy us that the deed was given for the sole purpose of vesting this court with an apparent jurisdiction.

It is insisted, however, that as McLean was called as a witness by the defendants, they are bound by his statements that the transaction was *bona fide*, and that Shaw has no interest in this suit. We do not so understand the law. While it is undoubtedly true, as a general rule, that a party offering a witness in support of his case represents him as worthy of belief, and will not be permitted to impeach his general reputation for truth, or impugn his credibility by general evidence, he has never been considered as bound by his general statements as to motives or intention, or his *bona fides* in a particular transaction, but may draw any inference from his testimony which the facts stated by the witness seem to justify. Particularly is this true where the party is compelled to prove his case from the mouth of the opposite party, who may be presumed to be hostile to him. In a similar case, (*Chandler* v. *Town of Attica*, 22 Fed. Rep. 625,) Judge WALLACE held, in passing upon a similar issue, that the court was "at liberty to disregard the testimony of the parties, so far as it is incredible, and to interpret the transaction in a way consistent with the ordinary conduct and motives of business men." If the story of the witness be consistent in itself, the party calling him is to a certain extent bound by his testimony; but, if his recital of facts is inconsistent with his theory, the court is at liberty to draw its own inference from them. If there be anything to the contrary in the case of *Tarsney* v. *Turner*, 2 Flip. 735, decided by the late circuit judge, we are compelled to enter our respectful dissent. *Kavanagh* v. *Wilson*, 70 N. Y. 177; *Koehler* v. *Adler*, 78 N. Y. 288; *In re May*, 1 Fed. Rep. 737.

The view we have taken of the plaintiff's title to these lands renders it unnecessary to consider the further question, whether a bill will lie by a purchaser at an execution sale to remove the cloud from his title. In the case of *Orendorf* v. *Budlong*, 12 Fed. Rep. 24, we held, in accordance with what we believed to be the great weight of authority, that such a bill was maintainable; but the recent case of *U. S.* v. *Wilson* 118 U. S. 86, 6 Sup. Ct. Rep. 991, suggests a grave doubt whether, if this question were presented to the supreme court, it would not

hold that an action in ejectment was a full, complete, and adequate remedy at law.

A decree will be entered dismissing the bill, with costs.