(162 App. Div. 142)

WIENER v. MAYER et al.   (No. 5713.)

(Supreme Court, Appellate Division, First Department.  May 1, 1914.)

1. MORTGAGES (§ 318*)—ACTION—QUESTION FOR JURY—ASSIGNMENT.

In an action on mortgage bonds executed by defendants to their vendor and paid by one who purchased the land from them subject thereto *held*, on the evidence, that whether the purchaser, when he paid the mortgages, intended to keep them alive or to assign them to plaintiff in satisfaction in whole or in part of a bona fide existing indebtedness, was for the jury.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 956–961; Dec Dig. § 318.*]

2. MORTGAGES (§ 278*)—TRANSFER SUBJECT TO MORTGAGE—RIGHTS OF PURCHASER.

A purchaser of property subject to mortgage has the option of either paying off the indebtedness or keeping it alive for his own protection and benefit.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 729–736; Dec. Dig. § 278.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. WITNESSES (§ 400*)—CONTRADICTION OF OWN WITNESS.

Defendants, in an action on mortgage bonds executed by them to their vendor and paid by one who purchased the land from them subject thereto, and by him alleged to have been assigned to plaintiff, were not bound by the testimony of plaintiff and such assignor, even though they had called them as the only ones who could explain the transaction between themselves, since the general rule that a party vouches for the credibility of his own witnesses does not apply to its full extent in such a case of hostile witnesses.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1268, 1269; Dec. Dig. § 400.*]

4. WITNESSES (§ 282*)—CONTRADICTION OF OWN WITNESS—EXAMINATION OF HOSTILE WITNESS.

A hostile witness may be cross-examined, and leading questions may be put to him by the party calling him, on the ground that he is adverse, and that the danger from such a mode of examination by the party calling a friendly witness does not exist.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 927, 989; Dec. Dig. § 282.*]

Appeal from Trial Term, New York County.

Action by Samuel Wiener against Isaac Mayer and others. Judgment for plaintiff on verdict, motion for new trial denied, and defendants Mayer appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and CLARKE, SCOTT, DOWLING, and HOTCHKISS, JJ.

David Leventritt, of New York City, for appellants.

Morgan J. O'Brien, of New York City, for respondent.

DOWLING, J. The action is brought to recover on two bonds executed by defendants to Samuel Jackson in the respective amounts of $4,500 and $4,000. On April 21, 1905, the four defendants purchased from Samuel Jackson and Lillian Jackson, his wife, certain property located on 191st street, near Eleventh avenue, in the city of New York, subject to mortgages aggregating $84,500. Simultaneously therewith they executed to Samuel Jackson, as part of the purchase price, two bonds and mortgages, one for $4,500, the other for $4,000; the mortgages covering the property transferred. On June 30, 1906, the defendants and their wives transferred the same premises to Bernhard Traubner and Martha Traubner, his wife, subject to mortgages aggregating $51,000, which amount included the two mortgages, aggregating $8,500, before referred to.

The purchase-money mortgages given to Jackson matured October 21, 1906. About that time Traubner, who still owned the property, called at the office of the mortgagee and asked him to extend the time of payment, as he was very short just then. He was told that the real owner of the mortgages must first be consulted with, and when he returned later for an answer was told that they would not extend the mortgage, whereupon Traubner prepared to pay the same. Within a few days he did in fact pay to Jackson, by a check of Traubner's firm made to his order, the amount of the two mortgages, with the interest due thereon. There had been some conversation as to whether he desired a satisfaction piece or the assignment of the mortgage when he

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

made the payment, at which time Traubner says he asked for an assignment, which, upon delivering checks for the amount due, with interest, he received in exchange therefor, the same then being in blank. Who it was that afterwards wrote in the name of Wiener as the assignee, or the precise time it was written in, does not appear. At any rate, it was not in the handwriting of Traubner. Traubner admitted that no part of the moneys which he paid over to Jackson came from Wiener. His explanation of how he came to turn over the assignment to Wiener is as follows:

Wiener is the brother of Mrs. Traubner. Prior to her marriage to Traubner she had been in business on her own account for ten years under the name of Martha Wiener & Co., when, in January, 1904, the business was taken over by a corporation under the same name. The stockholders of the corporation were Mrs. Traubner, who owned about 148 shares of the stock out of a total issue of 200 shares; her husband, who owned 1 share; and Edgar Arnold, who owned the remaining shares. Wiener says that in 1903 his sister, because she was no longer able to attend personally to her business, asked him to take her part in the management of the corporation of Martha Wiener & Co., about to be formed, and for these services agreed to pay him 40 per cent. of her profits realized from her stock in the corporation. This agreement is claimed to have been made in the presence of Traubner, who agreed to guarantee the payment. It is claimed by Wiener that he asked for some money from Traubner in the latter part of 1905 or the beginning of 1906, when the latter requested him to wait, as he could not pay, and inquired if he would take the assignment of some mortgages coming due shortly, to which Wiener agreed. Traubner's testimony upon this point is limited to the statement that he consulted Wiener several times at undisclosed dates, and asked him if he would accept the assignment of the mortgages in payment of the debt due from his wife and himself, to which Wiener consented.

No effort was made to explain why, if such an agreement had been made, Traubner had gone to the mortgagee, looking for an extension of the mortgage, instead of paying it off at once, and not preparing to pay it until he found he could not get any extension; nor was any explanation given as to why, if there was such an agreement, the assignment should have been taken in blank, instead of having Wiener's name filled in at once. It furthermore appears that, when the assignment was delivered to Wiener, he executed no receipt or release of his claim against Traubner and his wife, nor does it appear what the amount was to which he would have been entitled under his alleged contract. It did appear that Wiener had not received any payments under this alleged agreement with his sister, as would naturally have been done each year if this agreement was as claimed, and it is sought to avoid the force of this by a claim that he owed his sister certain undisclosed amounts which he had borrowed from her in 1897 and 1898, and that this was the reason why he had not received any payments before the delivery of the assignments of these mortgages.

Of course, the defendants were obliged to call Traubner and Wiener as witnesses, for that was the only method they had of endeavoring to show what the real relationship of the parties was. The plaintiff in-

troduced the bonds, and mortgages, with the assignments thereof, in evidence, and rested. He had then made out his prima facie case. The defendants called, among other witnesses, the plaintiff and his brother-in-law, Traubner, and also one of the defendants, who testified that Traubner had told him that he had paid off these mortgages. The defendants first asked for a direction of verdict in their favor, which was denied. The plaintiff then asked for a direction of verdict, which the court stated it was inclined to grant, whereupon the defendants asked to be allowed to go to the jury upon certain specific questions, including those of whether the circumstances shown by the record constituted payment of the indebtedness by the owners, and whether in fact Wiener was the agent or representative of the owners. The motion of the plaintiff was granted, and a verdict directed in his favor.

[1, 2] We are of the opinion that a question of fact was presented for the consideration of the jury as to whether upon all the testimony the intention of Traubner, at the time he paid over his own money to the mortgagee, was to keep the mortgages alive or to assign them to Wiener in satisfaction in whole or in part of a bona fide existing indebtedness. Concededly, Traubner was not liable upon either the bonds or the mortgages, nor under any obligation to pay the same; but, while no duty devolved upon him to discharge the indebtedness, he had an interest in relieving his property from foreclosure, in view of its possible loss under a sale, and with it the loss of whatever investment he had made in the property. There can be no doubt that, being himself a stranger to any direct liability to pay, he could have exercised his option of either paying off the indebtedness or keeping the same alive for his own protection and benefit. The question here is: What was his real intention?

[3, 4] We do not think the defendants were bound by the testimony of Wiener and Traubner, even though they had called them as witnesses, for they were concededly hostile and adverse ones, and the only ones who could have been called of whom inquiry could have been made as to what transpired between the Traubners and Wiener. The general rule that a party vouches for the credibility of the witnesses whom he produces does not apply to its full extent in such a case. In Becker v. Koch, 104 N. Y. 394, 402, 404, 10 N. E. 701, 703 (58 Am. Rep. 515), Judge Peckham called attention to the rule that with regard to adverse witnesses it was well settled that all rules applicable to the examination of other witnesses do not in their strictness apply, saying:

"An adverse witness may be cross-examined, and leading questions may be put to him by the party calling him, for the very sensible and sufficient reason that he is adverse, and that the danger arising from such a mode of examination by the party calling a friendly or unbiased witness does not exist. What favorable facts the party calling him obtained from such a witness may be justly regarded as wrung from a reluctant and unwilling man, while those which are unfavorable may be treated by the jury with just that degree of belief which they may think is deserved, considering their nature and the other circumstances of the case." 104 N. Y. 401, 10 N. E. 704 (58 Am. Rep. 515).

"The defendant calls the very man he accuses of the fraud as a witness to prove it, and says, in effect, to the jury, that such evidence as the witness gives which tends to show the perpetration of the fraud alleged is forced from him by the exigencies of the case and the surrounding facts, which cannot be denied, while that which he gives that looks towards an explanation of the.

fraud the jury shall give such faith to as under all the facts in the case they may think it entitled to." 104 N. Y. 402, 10 N. E. 705 (58 Am. Rep. 515).

"We think that the whole evidence of Exstein in this case should have been submitted to the jury, for them to pass upon its credibility, and that they were at liberty to believe that portion which tended to show the debts to be fictitious and to disbelieve the explanation, * * * just as in their judgment, intelligently and honestly exercised, they might determine." 104 N. Y. 404, 10 N. E. 705 (58 Am. Rep. 515).

In President and Directors of the Manhattan Company v. Phillips, 109 N. Y. 383, 17 N. E. 129, the doctrine laid down in Becker v. Koch was cited with approval, and it was held that where one of the parties to an action called his opponent as a witness, and proved by him facts tending to show bad faith upon his part in a transaction—

"the fact that such witness, in his own behalf, gives an explanation of the circumstances, which, if true, repels the presumption of bad faith, and that such explanation is not disputed by other evidence, does not authorize the court to take the case from the jury. It is for them to determine what degree of faith is to be given to the explanatory testimony."

In McLean v. Clark (C. C.) 31 Fed. 504, the court said: .

"It is insisted, however, that, as McLean was called as a witness by the defendants, they are bound by his statements that the transaction was bona fide, and that Shaw had no interest in this suit. We do not so understand the law. While it is undoubtedly true, as a general rule, that a party offering a witness in support of his case represents him as worthy of belief, and will not be permitted to impeach his general reputation for truth, or impugn his credibility by general evidence, he has never been considered as bound by his general statements as to motives or intention, or his bona fides in a particular transaction, but may draw any inference from his testimony which the facts stated by the witness seem to justify. Particularly is this true where the party is compelled to prove his case from the mouth of the opposite party, who may be presumed to be hostile to him. In a similar case (Chandler v. Town of Attica [C. C.] 22 Fed. 625) Judge Wallace held, in passing upon a similar issue, that the court was 'at liberty to disregard the testimony of the parties, so far as it is incredible, and to interpret the transaction in a way consistent with the ordinary conduct and motives of business men.' If the story of the witness be consistent in itself, the party calling him is to a certain extent bound by his testimony; but if his recital of facts is inconsistent with his theory, the court is at liberty to draw its own inference from them. If there be anything to the contrary in the case of Tarsney v. Turner (C. C.) 2 Flip. 735, 48 Fed. 818, decided by the late Circuit Judge, we are compelled to enter our respectful dissent. Kavanagh v. Wilson, 70 N. Y. 177; Koehler v. Adler, 78 N. Y. 288; In re May (D. C.) 1 Fed. 737."

After the close of the plaintiff's prima facie case, the defendants established that no part of the moneys concededly used to satisfy the mortgagee's claim, whether in payment or for an assignment, had come from Wiener, the plaintiff herein, but all had come directly from Traubner. This would have left the transaction in the position that Wiener had paid no consideration of any kind for the assignment, and was not really the owner thereof, but was simply holding it for Traubner, and that Wiener had no real interest therein. Both Traubner and Wiener sought to show that there was a valuable consideration for the transfer to Wiener in the form of an existing indebtedness from Traubner and his wife, and sought as well to show that the assignment to Wiener was not an afterthought, which had its origin after the money had been paid to the mortgagee by Traubner, but the result of a plan

often discussed by them in connection with the payment of an honest existing debt.

In view of the testimony heretofore referred to, and of other circumstances appearing in the record not necessary now to be detailed, we are of the opinion that, as the defendants were not bound by the explanations sought to be given by Traubner and Wiener of the existence of an indebtedness due by the former to the latter, a question of fact existed for the determination of the jury as to the good faith of the whole transaction. The question turned upon whether, at the time that Traubner paid his own money to Jackson, he intended to pay and discharge the mortgages, or whether, on the other hand, he intended to keep them alive by taking an assignment thereof for the benefit of Wiener, to whom it was to be subsequently transferred in payment of a valid indebtedness. We believe, therefore, that the request to go to the jury upon this question was erroneously denied.

The judgment appealed from will therefore be reversed, with costs to the appellants to abide the event, and a new trial ordered, that there may be submitted for the determination of a jury the following questions:

1. Did Traubner, at the time he paid the amount of these mortgages, with interest, to Jackson, intend to pay and discharge said mortgages?

2. Did Traubner, at the time he paid the amount of these mortgages, with interest, to Jackson, being then indebted primarily or secondarily to Wiener, make the payment and take the assignment of the mortgages with the then intention that the mortgages should be kept alive and assigned to Wiener in satisfaction of an indebtedness in his favor?

All concur.