VELLEMAN v. SIDNEY BLUMENTHAL & CO.

(Supreme Court, Appellate Division, First Department. April 14, 1916.)

1. SALES ⬥⟿150(3)—CONSTRUCTION—TIME OF PERFORMANCE.

   In December the plaintiff gave a conditional blanket order to defendant in accordance with a circular letter, reserving the right to cancel if prices and samples were not satisfactory. In January the plaintiff sent in his confirmation of the order and first specification, which was accepted by the defendant, who stated at that time that the remainder was to be specified as to qualities, colors, or deliveries, etc., July 15th or sooner. On May 19th plaintiff sent in specifications for the remainder and requested delivery on August 1st. Defendant replied that deliveries could not be made before October 15th. Plaintiff then offered to accept delivery of part August 1st and remainder August 15th, and stated that delivery later would be useless. Defendant offered delivery one-third in August, one-third in September, and one-third in October. Plaintiff was finally compelled to buy the goods in the open market. *Held*, that defendant must deliver the goods within a reasonable time after receiving the specification, taking into consideration the capacity of the factory and orders previously received and accepted.

   [Ed. Note.—For other cases, see Sales, Cent. Dig. § 356; Dec. Dig. ⬥⟿150(3).]

2. WITNESSES ☞321—CREDIBILITY—RIGHT TO IMPEACH OWN WITNESS.

  Although the plaintiff was at liberty to contradict the testimony of the defendant's president, by calling him to give general testimony depending on his veracity, he vouched for his credibility; and, his testimony being uncontroverted, the plaintiff was not then in a position to ask to have the jury find contrary thereto.

  [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1094, 1099, 1100; Dec. Dig. ☞321.]

    Page, J., dissenting.

Appeal from Trial Term, New York County.

Action by Abraham Velleman against Sidney Blumenthal & Co., a corporation. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed.

Argued before CLARKE, P. J., and LAUGHLIN, SCOTT, PAGE, and DAVIS, JJ.

Laurence Arnold Tanzer, of New York City (Eugene Blumenthal and David Levy, both of New York City, on the brief), for appellant.

Max L. Schallek, of New York City (Samuel Strasbourger, of New York City, on the brief), for respondent.

LAUGHLIN, J.  [1] This is an action to recover damages for a breach of contract. The plaintiff was engaged in the business of manufacturing millinery for the jobbing trade under the name Velleman & Co., and the defendant, a domestic corporation, was engaged in manufacturing plush and other pile fabrics for various lines, including millinery. Its factory was at Shelton, Conn., and was known as "Shelton Looms." Before making up its samples of goods to be manufactured for a particular season, defendant estimated the capacity of its factory and solicited conditional orders, known as "blanket" orders, from its customers for the quantity of goods each expected to need during the season, without specification as to quality, pattern, or color, and it annually issued a circular to the trade, stating the nature of the goods manufactured by it and the operation of its blanket order system.

The controversy presented by the appeal relates to dealings between the parties with respect to orders for the fall season of 1913. It appears by uncontroverted evidence that the plaintiff was familiar with the blanket order system of defendant, and had received a circular issued by it for the year 1912, which was similar to the one issued by it for the fall season of 1913, and that he gave defendant a blanket order for the year 1912, which, however, was not executed, owing to the fact that plaintiff failed to specify the qualities, colors, etc., thereunder. The plaintiff claims to have been familiar with the circular issued by the defendant for the fall season of 1913, and that is not controverted, for it is conceded that the defendant issued the circular to some of its customers; but plaintiff also claims to have received the circular from the defendant by mail, together with a blanket order for his signature, but that is controverted by evidence tending to show that the blanket order was presented to him by a salesman of

defendant. The plaintiff claimed that this circular constituted part of a contract made by him with the defendant for the delivery of goods pursuant to the blanket order system for the fall season of 1913; but that claim was controverted by defendant, and has apparently been abandoned by the plaintiff. Both parties now claim, in effect, however, that the contract is to be construed in the light of the circular.

The circular, so far as material to the decision of the appeal, stated, in substance, that the defendant's looms were equipped to make all varieties of pile fabrics required by the millinery and dry goods trades; that the total production was to be determined by the number of available looms; that from six to eight weeks were required from the time an order is accepted and entered "to weave yarn into cloth and properly dye and finish it, ready for shipment"; that its blanket order system contemplated an estimate by customers of the total quantity of goods they expected to require, but that the order would not be binding upon either of them until after defendant prepared and submitted its samples and prices, about the 1st of February, and that the blanket orders become binding and effective only in the event that the customer, after the samples and prices are submitted to him, "feels convinced that his own interest will be served by sending his specifications based on the facts before him at that moment"; that customers were expected at that time to specify qualities, colors, "and shipping dates for a liberal portion of the blanket, say 50 per cent., thereby confirming the blanket," and that later, and not beyond May 15th, a second installment of the assortment "is expected, for the larger portion of the remaining quantity"; that, when the limit of the mill's capacity has been reached, the defendant ceases taking blanket orders; that the latest syndicate colorings arrive at the end of June, "and that should be the final date to complete specifications," but that at that time the volume of specifications offered is so great "that delivery dates are controlled by priority of specifications offered"; that "assortments, for future delivery, at blanket prices, are accepted until July 15th, but they are subject to such delivery dates as the mill *can offer at the time they are received,*" and that "if delayed much after July 1st, the best possible delivery dates may be September, October, November, or even December"; that the confirmation of the blanket order by the first specification thereunder by the customer secures the right to the customer "to assert the remainder of the blanket quantity on the conditions" specified in the circular.

On the 14th of December, 1912, the plaintiff signed a blanket order on defendant's form, and either mailed it to the defendant, or delivered it to its salesman, requesting it to enter his *conditional* blanket order for 1,000 pieces of velvets, plushes, and novelties for the fall season of 1913, reserving the right to cancel it if prices and samples, when submitted, should not be satisfactory. On or about the 23d of January, 1913, defendant's samples and prices were submitted to plaintiff, and on that day he signed a specification in writing, by which he ordered 475 pieces of plush, of quality known as E–1110, of uniform width, and of different colors. Under date of February 6, 1913, the defendant mailed an acceptance of the specification, which was ex-

pressly stated to contain all the terms of purchase and sale, and that the execution of the order was subject to curtailment in production, owing to labor troubles or other causes, and that the seller was not to be liable for "late" or nondelivery on these accounts. It was stated in the acceptance that it was a confirmation of a first assortment against the 1,000-piece blanket order, and that the prices therein specified were not binding, excepting for such detailed assortments as were given before July 15th; that assortments were subject "to the mill's capacity to meet dates at the time assortments are offered," and that the seller had the right "to demand a reasonable period, sufficient to permit of manufacture under normal conditions"; and that the remaining 525 pieces were to be specified "as to qualities, colors, deliveries, etc., July 15th or sooner, but the earlier such specifications are completed the better we can meet delivery requirements." There was annexed to this acceptance a detachable slip, which the plaintiff detached and returned to defendant under date of February 18, 1913, by which he acknowledged the receipt of defendant's acceptance and stated that "the same is correct in all particulars and is hereby confirmed." The 475 pieces of goods ordered by the first specification were manufactured and delivered to the plaintiff. He wrote the defendant on the 19th of May, 1913, specifying an assortment of colors for the remaining 525 pieces of goods covered by the blanket order, and closed the communication with a sentence as follows: "Deliveries to be made before August 1, 1913."

The next day defendant wrote plaintiff, acknowledging receipt of the specification for the 525 pieces, and directing attention to the fact that the quality was not specified, and stating that if the same quality was intended that had been first specified the earliest date on which delivery could be made would be from October 15th to the end of that month, and that it would be unable to deliver on August 1st, as requested, but that, if other qualities were desired, it would be able to deliver as requested. In a postscript to that letter, defendant stated that it had given notice, a copy of which it inclosed, to all its customers on May 2d. The notice was to the effect that all of its important millinery plush qualities of goods were engaged up to the middle of October, and that, while it would make deliveries on assortments theretofore received on the dates requested, deliveries under future assortments could not be made until after October 15th. The plaintiff showed that he did not receive this notice prior to receiving the copy inclosed in defendant's letter. On the 23d of May, plaintiff replied to this letter of the 20th, saying that he assumed that defendant knew he wanted the same quality as he had previously received, and claiming the right to a delivery, and demanding a delivery, by August 1st. On May 26th the defendant replied, saying that, notwithstanding the enlargement of its plant, it was unable, owing to the increased demand, to accept orders for delivery of the quality desired by the plaintiff earlier than the end of October, but that it was desirous of meeting plaintiff's wishes, and if he would be considerate it would proceed with his order at once and endeavor to make delivery of one-third of the assortment by the end of August, and another third in

September, and the remainder in October, and requesting him to telephone or write whether that would be satisfactory. He replied under date of May 28th, drawing attention to the date upon which the blanket order became effective, and stating that he had offered to make an assortment for the remainder of the order on or about May 1st, but that defendant's representative refused to accept the same, and saying that he could not use the goods on the dates specified in defendant's last letter, and that, while he insisted that delivery be made on August 1st, he was willing to be lenient and to accept a substantial part of the order on or about August 1st, and to extend defendant's time for the delivery of the balance to August 15th, but not later, and expressly stating that this was only on condition that substantial deliveries be made on or before August 1st.

Defendant on the same day, after receiving this letter, wrote plaintiff two letters, one by its sales manager, and the other by its president. The letter written by defendant's sales manager purported to quote the provision of the order to the effect that delivery dates are subject to the capacity of the mill to meet them at the time assortments are offered, and quoted the provision thereof to the effect that the earlier specifications are completed "the better we can meet delivery requirements," and stated that defendant was serving its customers in the order of priority of assortments, and that the capacity of the mill at that time was such that it could not meet a delivery date earlier than offered to plaintiff in its letter of the 26th of May, and that unless it heard from him by the next day, accepting the delivery dates offered by defendant, it would be unable to keep them open. In the one written by defendant's president attention was drawn to its blanket order system, and it was stated that prior to February 1st it had taken orders to the extent of the capacity of its factory for the entire period between February and October, and that it was manifest, therefore, that it could not fill all orders prior to the expiration of the period required for the manufacture of the goods, as would be the case if all of its customers desired their orders filled by August 1st, and that it was willing to do its very best to fill his order as soon as it could be done, and in substance that it would endeavor to make deliveries earlier than the dates promised by it, but that it could not obligate itself to do so, or promise to make deliveries on the dates requested by plaintiff. On the next day plaintiff replied to both of these communications, stating that the goods would be of no use to him unless he received them prior to August 15th, and claiming that defendant knew this, and he expressly stated that he insisted upon delivery in accordance with his letter of the 28th of May. Two replies were written in behalf of the defendant on the same day, in one of which it answered a charge made in some of plaintiff's letters to the effect that he understood that defendant had the goods on hand and that it was holding them for, or selling them at, higher prices, saying that it did have a large stock of merchandise on hand, but it did not have the quality which it understood he desired, and that it extended to him the privilege of inspecting the goods it had on hand and the conditions at the factory with respect to delivery; and in the other it demanded, in effect, to

know definitely whether he desired to have it proceed with the order under the suggestions contained in its letter of the 28th of May, and that it would consider the order withdrawn unless it received such an answer on Monday following the day on which the letter was written. The plaintiff did not avail himself of the offer to inspect the goods which defendant had on hand, and failed to reply to either of defendant's letters of the 29th of May. There were no further negotiations between the parties.

The plaintiff claimed that his fall season for the manufacture of millinery ended about September 15th; but there is evidence tending to show that in the year 1913 it did not end until December. The fact that the season for these goods did not end the middle of September is established by the uncontradicted evidence that none of the purchases made by the plaintiff of goods to take the place of those covered by the unfilled part of the blanket order was made until the 15th of August, and they continued until the 4th of October. That question is not material, however, inasmuch as the contract is silent on the subject, and it cannot affect the defendant's rights under the express provisions of the contract.

The court evidently intended to submit the case to the jury on the theory that it was the duty of the defendant to deliver the goods within a reasonable time after plaintiff gave the specification therefor; but the learned trial justice stated to the jury that the question for them to decide was which of the parties acted reasonably, and whether the position *originally* taken by the defendant with respect to the time of delivery was, under all the circumstances and particularly in view of its subsequent offer to make partial deliveries at earlier dates, reasonable. The only evidence, other than that to which reference has been made, bearing on the question of a reasonable time for delivery of the goods after the specification was made, therefore, is the testimony of the defendant's president, which is to the effect that, in view of the capacity of the factory and the orders on hand for this quality at the time, the dates upon which the defendant offered to deliver were the earliest dates upon which it could make delivery. He was called by the plaintiff to give general testimony with respect to the time it would take to fill an order under normal conditions; but the testimony on this precise point was given on his cross-examination and redirect examination, and when he was called in behalf of the defendant.

We are of opinion that the duty of the defendant was to deliver the goods within a reasonable time after it received the specification therefor, but that in determining the reasonable time, not only should the capacity of the factory be considered, but also the orders previously received and accepted. It was well understood by both parties that the defendant did not hold its employés and its factory ready to proceed with an order by any particular customer, but that under the blanket order system under which defendant did business the orders were to be filled in the order in which specifications were given. The advantage which the customer had under this system was, in effect, to have an option to take a given quantity of goods, estimated to be the quantity which he would need, at the original prices fixed by the de-

fendant for the season, to be exercised when the prices and samples were subsequently submitted, and, once exercised, it entitled him to have the entire blanket order filed at the prices specified, and it then insured the entire order to the defendant; but, as already observed, the intention of the parties in making the contract was that the orders were to be filled, as the defendant was filling them, according to the priority of their being placed with it. If, in the circumstances, there was a question of fact for the jury, it is manifest that the verdict is against the weight of the evidence, and should not be permitted to stand; but we are of opinion that there was no issue of fact for the consideration of the jury.

[2] The plaintiff was, of course, at liberty to *contradict* the testimony given by the president of the defendant; but he failed to do so, and, having called him as a witness to give general testimony depending upon his veracity, he vouched for his credibility, and when his testimony was uncontroverted the plaintiff was not then in a position to ask to have the jury find contrary thereto. Carlisle v. Norris, 215 N. Y. 400-409, 109 N. E. 564. The complaint, therefore, should have been dismissed on defendant's motion.

It follows that the judgment and order should be reversed, with costs to appellant, and the complaint dismissed, with costs. Order filed.

CLARKE, P. J., and SCOTT and DAVIS, JJ., concur.

PAGE, J. (dissenting). I cannot concur in the reversal of this judgment and a dismissal of the complaint. · In my opinion there was a question of fact for the jury, and their finding should be conclusive. The salient facts of the case are as follows: The action was for damages for breach of contract to sell and deliver merchandise. The defendant is a large manufacturer of plush and pile fabrics. The plaintiff is a manufacturer of ladies' hats, using such material as the defendant produced. In the latter part of 1912 the defendant printed a circular in which it invited "blanket orders" for its fabrics. Plaintiff received such a circular inclosed in the blanket order form. On December 14, 1912, plaintiff filled out this form and gave a conditional blanket order for 1,000 pieces. The form reserved the right to cancel if prices and samples were not satisfactory. Defendant submitted samples and prices, and on January 23, 1913, plaintiff signed his first "assortment" of 475 pieces. The defendant accepted this order and stated it to be a confirmation of and first assortment under 1,000-piece blanket order for 1913, and further stated:

"525 pieces remainder to be specified as to qualities, colors, or deliveries, etc., July 15th or sooner, but the earlier such specifications are completed the better we can meet delivery requirements."

In my opinion this constituted a valid and enforceable contract for the sale of goods, with the right to the purchaser to specify the delivery date. The only condition imposed by the seller was that the specification should be made prior to July 15th, to enable it to meet the delivery requirement. The law would imply a further condition

that the date specified should be a reasonable one. On May 19th, nearly two months prior to the time limit set by the defendant, the plaintiff sent its specification of its assortment of the 525 pieces, delivery to be made August 1st. To this defendant replied that deliveries could be made only from October 15th to 31st. The plaintiff then stated that, if a substantial portion of the goods were delivered August 1st, it would accept the remainder on August 15th, but stated that the goods would be useless to them at a later date. The defendant then proposed a delivery of one-third at the end of August, one-third in September, and one-third in October. This proposition plaintiff declined, and, after the exchange of several letters, the defendant wrote on May 29th:

"We have given you the best delivery dates we can make. We want an answer per return whether you accept our proposition of delivery dates or not; otherwise, your order is off on Monday."

It might be observed, in passing, that the price of the goods which were the subject of the order had advanced in the meantime. Plaintiff was compelled to buy these goods in the open market, and paid $2,410 more than the contract price. There was conflicting testimony as to the market value, and the jury rendered a verdict for the plaintiff for $1,600.

Whether the time specified by the plaintiff was reasonable was for the jury to determine, having regard to all the circumstances as disclosed by the evidence. While the charge of the learned trial justice did not state this proposition as clearly as he might have done, there was no exception taken to the charge, nor any request to charge made by the defendant. The jury were not compelled to take the testimony of the defendant's president as true. He was an interested witness, and they had the right to consider how far his testimony may have been colored or biased by his interest. The fact that he was called by the adverse party as a witness in their behalf as to certain facts did not eliminate his interest. His relation to the transaction was such that his credibility was properly a question for the jury, notwithstanding the fact that he became a witness at the instance of the plaintiff. Becker v. Koch, 104 N. Y. 394, 398–402, 10 N. E. 701, 58 Am. Rep. 515; Rochester Printing Co. v. Loomis, 45 Hun, 93, 100, affirmed 120 N. Y. 659, 24 N. E. 1103; Sharp v. Erie R. R. Co., 184 N. Y. 100, 106, 76 N. E. 923, 6 Ann. Cas. 250; Wiener v. Mayer, 162 App. Div. 142, 146, 147 N. Y. Supp. 289.

I am of opinion, as there was no exception that presents reversible error, and as there was a question of fact for the jury, that the verdict should not be disturbed, and the judgment should be affirmed.